## THE ATLANTIC INSURANCE COMPANY *v.* JOSE MARIA LUNAR.

The complainants in a bill of discovery, were sued at law as insurers of specie shipped in a vessel which was lost during the voyage. They charged in their bill that the claim under the policy was fictitious and fraudulent ; that the defendant, who had sued them at law, never possessed any such specie, or but a small portion of it; and that, on diligent inquiry at the ports of shipment, they had been unable to obtain any information or trace of the specie said to have been shipped, or of the defendant himself. The bill also alleged various circumstances which made the claim suspicious, and of doubtful authenticity ; and it sought a full and minute discovery as to the defendant's interest in the shipment, and as to all the circumstances of the shipment itself. The suit at law was on a valued policy, taken out by an agent, on account of whom it might concern. The plaintiff at law, by testimony taken *de bene esse*, was prepared to make out his case on trial, upon proving his interest merely.

A demurrer to the bill was overruled.

It is not necessary, in a simple bill of discovery, to allege that the complainant is not able to prove his case at law without the benefit of the discovery sought.

A defendant at law may file a bill of discovery for the purpose of rebutting the evidence which is necessary to sustain the plaintiff's action. He is entitled to the discovery of evidence for the purpose of attack on the case of his adversary.

June 23, 28 ; August 18, 1843.

THIS was a bill of discovery in aid of the defence in an action at law upon a policy of insurance.

On the 8th of July, 1833, the complainants effected an insurance for Peter Harmony & Co., on account of whom it might concern, loss payable to them, on specie, and silver and gold bullion, valued at $31,525, from Callao and Guayaquil, to Cadiz, shipped in the name of Capt. H. Barstow, in the ship Ysidra, of which he was master. The ship was lost near the coast of Portugal, on the 2d of September, 1833. On the 25th of November, 1833, P. Harmony & Co. assigned the policy to Barstow, reciting that it was effected by his order, and that they had no interest.

On the 23d of December, 1833, Barstow exhibited to the complainants preliminary proofs of the loss and interest, and claimed payment to himself as on a total loss. Among the

preliminary proofs were an invoice of the specie and silver bullion, dated at Lima, March 19, 1833, describing the boxes of specie and bars of bullion, and stating the shipment to be by Barstow, for his account and risk; a bill of lading, signed by him, of the same date and tenor; an invoice of the gold bullion, dated Guayaquil, April 29, 1833, and a bill of lading of the same date, and both similar to the two former; also, an affidavit of Barstow, detailing the shipment, &c. The proofs made no mention of any person other than Barstow being interested in the insurance, but on inquiry he stated that the property belonged to Hosea Maria Lunar.

The complainants suspecting fraud, refused to pay, and a suit was commenced against them on the policy, in the Superior Court of the city of New-York, in the name of Joseph Maria Lunar, and issue was joined in March, 1834.

The bill alleges many circumstances tending to show that the captain was guilty of barratry in sinking the vessel; that the specie, &c., insured by the policy was not in fact shipped, or if shipped, that much less than the sum claimed was put on board; that the claim made is fraudulent; that it was prosecuted by Barstow, and for his benefit, without any authority from Lunar, or communication with him; that Lunar is a fictitious name; that no such person exists, and if he does exist, that he made no such shipment, and had no interest in the property claimed. The bill states the examination, *de bene esse*, in the suit at law, of the first mate of the Ysidra, on the part of the plaintiff, and concedes that his testimony, with the other proofs exhibited, establish, *prima facie*, the plaintiff's case at law, with the exception of proof of interest.

The bill sets forth various inquiries and efforts made by the complainants at ports and places on the western coasts of South America and Mexico, where Barstow stated that Lunar had lived and traded, to ascertain the existence, residence and circumstances of Lunar; and especially at Lima, Callao and Guayaquil, to learn as well those facts, as the circumstances relative to the shipment of the specie and bullion there; and it stated that all those inquiries had proved abortive. They

have never discovered any trace of the specie, or of the alleged owner.

The bill makes a specific charge that Lunar never possessed the property which the complainants insured; or if any, but a small and inconsiderable part of the same.

They state their belief founded on their inquiries and the result, either that no such person as Lunar exists, or that he was some obscure person not really interested, and whose name was surreptitiously or at a venture, used by Barstow to cover the transaction. That the claim so urged against them is fraudulent and unjust. That as they are advised by counsel and believe, they have a good and substantial defence on the merits to the action at law, and a discovery from the plaintiff therein of all the circumstances and particulars connected with the alleged shipment and insurance, or out of which they arose, and all those connected with the possession and ownership of the property mentioned in the invoices and bills of lading; independently of those connected with the right to maintain the suit at law in the name of Lunar as the person insured, or intended so to be, and as the person intended to be named as plaintiff when the suit at law was commenced, is material and necessary in order to establish an important branch or ground of their defence, and without which they cannot safely proceed to the trial thereof; and that such circumstances and particulars cannot be ascertained by the examination of witnesses, or otherwise under the peculiar circumstances of the case, than by the discovery prayed for in the bill. They also state that the discovery is necessary in order to show that but a small amount of property, if any, was in fact shipped and covered by the policy, or owned by Lunar.

The discovery sought, among other things, is whether Lunar ever possessed the property insured, or any and what part of it; from whom, when and where he and Barstow, or either of them, obtained it, and from whence, when, by whom, &c., it was transported, and where deposited, &c., before shipment. By whom and when, &c., the same was counted, weighed, marked, and its quantity and value ascertained. And various minute inquiries are made as to its delivery to Barstow, and the instruc-

tions given to him, and particularly as to what property and effects Lunar had on board the Ysidra, and where shipped, &c. The bill set forth sundry orders for discovery made by the court at law, on the complainant's application, which had not resulted in their obtaining the requisite information.

The defendant demurred to the bill for want of equity.

*E. Sandford* and *J. Anthon*, in support of the demurrer, submitted the following points.

I. The bill charges that the vessel was wilfully destroyed at sea, with intent to defraud the underwriters. This appears from the entire frame of the bill, and, notwithstanding the complainant's caution, it is clear that such is their intended defence at law. Unless such defence is expressly waived, the complainant is not entitled to the least aid in the way of discovery.

Authorities cited—8 Paige's R. 419. Act of Congress, March 3, 1825, § 23. Wigram on Discovery, 61. 63. 2 Paige, 599.

II. The defendant, to maintain his action at common law, is bound to prove his interest and the extent of it, and can recover only so far as he proves both. The bill seeks a disclosure of the evidence by which, and the manner in which he intends to prove his case. The complainant has no right to a discovery of either matter.

Authorities—Wigram on Discovery, 19. 90 to 112. 2 Vesey, Jr. 679.

III. The complainant has already appealed to a concurrent jurisdiction, competent to grant relief by discovery, and has obtained all he is entitled to. The matter ultra, is *res adjudicata.*

Authorities—5 Barn. & Ald. 540. 2 Vesey, 398. 5 Madd. R. 18. Jeremy's Eq. Jur. 257.

*C. B. Moore* and *D. Lord, Jr.*, for the complainants, in support of the bill.

I. As the question before the court relates to the propriety of requiring the discovery, independently of any question about the injunction, it is sufficient to show that the discovery sought

is relevant and material to the defence at law. (9 Paige, 580. 4 Johns. C. R. 411, 412.)

II. The bill sets forth particularly the nature of the claim at law, the evidence known to exist in its favor, and the nature of the defence ; and it shows a clear case for a discovery of facts material and important in aid of a defence at law, as to—

1st. The interest and connection of Barstow.

2d. The extent of the shipment, (2 Phillips on Ins. 12.)

3d. The identity of the plaintiff as the party really insured, and to enable inquiries to be made respecting him.

4th. The general charge that the claim is a fraudulent one. (2 Story's Eq. Jur. 869.)

III. It does not come within the objection of being a mere fishing bill. (2 Caines' Cases in Error, 296. 3 J. C. R. 45. S. C. 16 Johns. R. 599.)

IV. The bill does not come within the objection of seeking to discover the mere non-existence of facts essential to be proved by the plaintiff in the suit at law, and which it cannot be presumed he will be able to prove. (2 Paige, 599.)

1st. A bill may be filed as well to rebut and repel a claim set up as to establish an original case. (5 Paige R. 246. 249. S. C. 22 Wendell, 523. 3 Ed. C. R. 480. S. C. 9 Paige, 624. 2 Vernon, 716. 4 Vin. Abr. Gaming, D. 3. 1 Younge & Collyer, 697. 2 Ib. 366.)

2d. The present bill does not ask a discovery of the mere non-existence of facts, but, on the contrary, of the existence of distinct facts under the four heads above given.

3d. The particular matters of which a discovery is sought, are such as relate to the complainants' title, being such as must be given in evidence by them, by way of defence at law, after the plaintiff has rested his proofs. (1 Price, 208.)

4th. After a party has produced documents, depositions, &c., (as in this case,) it is too late for him to say that it cannot be presumed he can succeed on his own proofs, and that he ought not to make a discovery on that ground. (3 Price, 477. 1 Younge & Collyer R. 686. 693.)

5th. The objection is founded upon the idea that the court cannot presume perjury will be committed, nor that a bad case

can be sustained without perjury ; and it is not to be applied where proofs have been already taken and where these circumstances have no application.

V. The bill is not subject to the objection that the discovery sought will tend to convict the defendant of an indictable offence.

1. It charges no conspiracy   A criminal connection of others is not to be presumed.   To prosecute a false claim is not unlawful.   (2 R. S. 691.   1 R. L. 173.   16 Johns. R. 600.   2 Harris & Gill, 382.)

2. This ground of objection should have been specified in the demurrer, and it would not extend to the whole bill.   (3 Paige, 231.   1 Swanston, 285.)

VI. The proceedings in the Superior Court were proper and necessary, preliminary to an application to this court, and having failed of obtaining any information, and the remedy at law being exhausted, this court acquires jurisdiction to aid the proceedings at law, in order to ascertain the identity of the plaintiff, as the party insured, and to enable inquiries to be made respecting him.

They were *proper*—(5 Barn. & Ald. 540. *Morton* v. *Smith*, note to 7 Eng. C. L. Rep. 185.   3 Wend. 153.   3 Chitty's Gen. Prac. 153. 211, 212. 252.   2 Term Rep. 82.)

Were *necessary*—2 Edwards' Ch. Rep. 607.

Were not a bar to proceedings in this court—14 Johns. R. 76.   5 J. C. R. 52.   2 Ed. Ch. R. 75.

This court has jurisdiction—Ld. Redesdale Tr. 186.   Hare on Dis. 119.   2 Story Eq. Juris. 864.   16 J. R. 599.   1 Bligh. 121. 133.

The Assistant Vice-Chancellor.—The demurrer being to the whole bill, it must be overruled if the complainants are entitled to any part of the discovery which they have sought. I am perfectly well satisfied, that much of the discovery prayed, ought not to be compelled ; and as to another and large portion of it, I entertain serious doubts of its propriety.   There is however, a part of the case made by the bill, to which I think the complainants are entitled to an answer.   In placing my de-

cision upon that part of it. I do not determine whether the residue of the bill is demurrable or otherwise.

The complainants charge that the claim made upon them by the defendant under the policy in question, is fictitious and fraudulent. That the defendant never possessed the property alleged to have been shipped, and which is covered by the insurance, or if any, but a small portion of it. That on diligent inquiry at the ports from whence the shipments were made, they have been unable to obtain the slightest trace or information of the property in question, or of the defendant himself. They state facts in their bill, which on the demurrer are to be taken as true, and which render the claim made by the defendant in the suit at law, suspicious and of doubtful authenticity, independent of the allegations which I have mentioned. They aver that the discovery sought in reference to the interest of the defendant, is not only material but necessary to their defence at law. Many of the interrogatories founded upon these allegations, are pertinent to this point of interest in the shipment and its extent; and a full and frank disclosure upon them, will tend to elucidate the fairness and justice of the claim.

The claim being upon a valued policy, it is only necessary for the defendant to prove at law, a substantial interest in a subject corresponding to, and satisfying the description in the policy. (2 Phill. on Ins. 743, and the cases there cited.)

It is not incumbent on him to prove that the whole property was shipped, or that he was the owner of the whole. On the other hand, the insurers may show, that either by mistake or design the whole of the property insured was not put on board; or if it were, that the claimant had an interest in only a part of it; and thus entitle themselves to a proportionate reduction of their liability on the policy. (2 Phill. 12; *Wolcott* v. *Eagle Ins. Co.*, 4 Pick. 429.) And see *Le Pyre* v. *Farr*, (2 Vern. 716.)

The possession of the property by the claimant, (which is evidence of ownership,) and the extent of his interest, are therefore material and important inquiries in the suit at law ; and from the nature of the policy, constitute more of the case of the defendants in that suit, than of the plaintiff.

This being a mere bill of discovery, it is not necessary for the complainants to show that they cannot otherwise establish their defence at law. 2 Story's Eq. Jurisp. 701, § 1483; *Montague* v. *Dudman*, 2 Ves. Sen. 398, per Lord Hardwicke, and again in *Finch* v. *Finch*, id. 492; *March* v. *Davison*, 9 Pai. 580, per Walworth, Chancellor.

The prayer for an injunction to stay the proceedings at law, pending the discovery, does not convert this into a bill for relief as well as discovery. (Story's Eq. Pl. 256, § 316; Hare on Discovery, 14.)

It is objected by the defendant, that the bill seeks a disclosure of the evidence by which the insured intends to prove and maintain his case at law, and that the complainants have no right to this disclosure, it being, in effect, a discovery of their adversary's title, and not of their own case.

The general rule laid down in the treatises on discovery in equity, limits it to the complainant's case, and forbids a discovery of the defendant's evidence, or of the means by which he intends to establish his case. Wigram's Points on the Law of Disc., 90, 94, 112, and the cases cited. 2 Daniells' Ch. Pr. 62. *Newkirk* v. *Willets*, (2 Caines' C. in E. 296.)

It is difficult to draw the line of distinction between what constitutes the plaintiff's case, and what the defendant's. The matter in question may be common to both, and the rule concedes to the complainant a discovery, directed as evidence to the purpose *of attack* upon the case of his adversary. (Wigram, 90, § 144.)

Most of the cases on this subject have arisen upon conflicting titles to real estate; and if applicable at all in our practice, are not applicable to the case under consideration. We have seen that the insured may sustain his action on this policy, without proving either his shipment or its amount, *in extenso*. Hence, what relates to these facts is common to the case of both of the parties. The general rule to which I have alluded has been much shaken, not only in the treatises, but by adjudged cases. See Hare on Disc., 210, 211; Mitford's Pl., 9. *Metcalf* v. *Harvey*, (1 Ves. Sen. 249.)

In *Glascott* v. *The Copper Miners' Company*, (11 Simons'

R., 305,) the bill stated an action at law against the complainant for the recovery of a sum of money alleged to be due under a special contract. It averred that there was no such contract, that it was fictitious, that the company were not in fact the vendors of the ore sold by the alleged contract, and that the defendants had books and papers by which the matters charged in the bill would appear. The bill did not ask a discovery of any matters to support a case intended to be made by the complainant by way of defence to the action, but of matters to defeat the case necessary to be made by the company to sustain their action. On demurrer to the bill, it was argued for the defendants, that the object was to discover their case as plaintiffs at law, that the allegation was that there was no such contract, and the answer to the bill was, that if they did not prove their case at law, they would be nonsuited. Vice-Chancellor Shadwell overruled the demurrer, and held that a defendant at law may file a bill of discovery, not only to sustain his defence to the action, *but to rebut the evidence in support of it.* And in *Coombe* v. *The Corporation of London,* (1 Younge & Coll. New Cases in Ch., 631, Sir Knight Bruce's decisions,) it was held, that in order to protect the defendant from a discovery of a document relating to the subject in dispute, it is not sufficient that it should be evidence of his title, or which he intends, or is entitled to use, in support of his case. It must contain no matter supporting the complainant's title or his case, or impeaching the defence, and the defendant must aver by his answer that the document does contain no such matter. (And see *Colls* v. *Stevens,* 7 London Jurist Rep., 54, decided Jan. 21, 1843, by the Vice-Chancellor of England.) Mr. Wigram(*a*) himself concedes in his Treatise, page 92, note *e,* that where the complainant suggests that the plaintiff at law *has no title,* this must be answered.

It is not necessary to go so far as the two very recent cases just cited at large, in order to maintain the discovery sought here, to the extent which I have designated.

The case of *Glyn* v. *Soares and the Queen of Portugal,* (1

---

(*a*) Sir James Wigram, now Vice-Chancellor.

Y. & Coll., Exch. R., 644, 653,) is quite analogous in the application of the discovery to the action at law ; and *Janson* v. *Solarte*, next cited, is a full authority to the extent to which I go here.   In *Glyn* v. *Soares*, the complainant had accepted bills of exchange on a loan to Don Miguel while King of Portugal, for which Portuguese bonds were issued.   On the Queen's expelling Miguel, her adherents obtained possession of one set of the bills which had been sent to his treasurer, procured the latter to indorse them, and sent them to England to collect ; at the same time repudiating the bonds.   The acceptors were sued on the bills, in the name of Soares, the Queen's agent.   They then filed a bill of discovery, setting forth that the Queen obtained the possession of the bills by fraud and without consideration, that the indorsement of Miguel's treasurer was procured by duress, &c., and that the Queen had no title to the bills.   The bill in equity prayed a discovery of the matters charged, in aid of the defence at law.

On demurrer to the bill, one of the two principal questions was, whether a discovery of such matters would be granted by the court.   It was also urged that the facts alleged in the bill did not show a defence at law.   The court held that the discovery was proper.   That they would not decide whether the matters of the discovery sought, were or were not a defence at law.   That if it were a case of reasonable doubt, the discovery must go on ; and that it was at least a case of doubt whether on the facts alleged, the acceptors could be charged with the bills of exchange in the Queen's hands.   It had been decided previously by Lord Thurlow, in *The Bishop of London* v. *Eyre & Fitch*, (1 Bro. Ch. C. 96,) that the want of materiality was not a ground of demurrer to a bill of discovery.

*McIntyre* v. *Mancius*, (16 Johns. 592 *in error*,) was in some respects, similar to *Glyn* v. *Soares*, and was decided in the same way.

*Janson* v. *Solarte*, (2 Younge & Collyer R. 127. 132,) is parallel to the case at bar.   The underwriters at Lloyd's had effected policies on certain goods and doubloons alleged to have been shipped at Bordeaux, and the vessel was lost eleven days after she sailed.   An action had been brought on the policies in the

name of Solarte.    The interest in the shipment was averred to be in Santemarie & Santos, partners at Bordeaux.    The bill charged that the whole case made in support of the action at law was false, that no such property had been purchased or shipped by the assured ; that it was pretended that a great portion of the goods, which in all were valued at 175,000 francs, were paid for in bills of the assured, whereas their house was then in bad credit, and could not have procured credit on their bills for 10,000 francs.    The object of this suit was to ascertain the truth of the alleged purpose and shipment, and the bill contained many minute inquiries as to the time and manner of the purchases, and the names of the several vendors and consignees.

Santos having answered very fully, and Santemarie having died, as was supposed, a motion was made to dissolve the injunction.    The motion was refused.    No objection appears to have been made to the complainants right to the discovery. Subsequently the complainants were permitted to amend their bill by stating other circumstances impeaching the claim on the policies, and founding further inquiries in regard to the purchase and shipment.    The principal argument was on the extent to which those inquiries might be pushed.    Lord Abinger, in his judgment, says—" Nothing is more difficult to ascertain, " and nothing more dangerous, than to limit the right of under- " writers to discovery.    It has been considered at all times and " in all countries, that in cases of this nature the underwriters " are entitled not only to a discovery of all the circumstances at- " tending the original contract, but *to the whole history of the* " *adventure and loss.*"

The case of *The New- York Fire Ins. Co.* v. *Delavan,* (8 Paige, 419,) cited by the defendant, was a bill for relief as well as discovery, and was certainly anomalous.    If, in that case, after a suit on the policy, the insurers had filed a simple bill of discovery, asking for a statement of the invoices of the goods which the assured had, and from whom they were purchased, and other disclosures as to the property on hand at the time of the loss, the bill would have been sustained.

In *Lane* v. *Stebbins,* (9 Paige, 622,) where the discovery was

refused, the complainant alleged no ground of defence which was to be sustained thereby. It was in that respect a mere fishing bill, like *Newkirk* v. *Willett*, (2 C. C. in E., 296,) before cited.

Another objection urged by the defendant is, that the discovery sought is in answer to charges, which if true, would subject him to a criminal prosecution.

Thus, 1. The charge of a joint interest, and a combination with Barstow, to sink the vessel to defraud the underwriters, an offence which, by the laws of the United States, subjects the guilty parties to ten years imprisonment. (Act of March 3, 1825, ch. 276, § 23. 3 Story's Laws of the U. S. 2006.)

2. The shipment of the specie and bullion is shown to have been contraband, and a violation of the revenue laws of the places from whence it was shipped, and the bill shows that by those laws, smuggling was punishable with penalties and forfeitures.

3. Again, the combination between Barstow and the defendant to defraud the complainants, stated in the bill, if truly set forth, was in part transacted here, and is by our laws punishable as a conspiracy, irrespective of the act of Congress. (2 Rev. Stat. 691, § 8.)

This objection is not applicable to the portion of the bill on which I proceed. The discovery as to the extent of the defendant's shipment and interest, has no reference to the alleged barratry. And it has no necessary connection with either the smuggling the property, or the conspiracy to defraud the underwriters. This should appear *affirmatively*, to exempt the defendant from a discovery. (*The Bishop of London* v. *Eyre & Fitch*, 1 Bro. Ch. C. 96; *Wolf* v. *Wolf*, 2 Harr. and Gill. 382.)

If the objection is tenable as to any part of the multiform discovery sought by the bill, and as to this I need not now express an opinion, the defendant will avail himself of it when he comes to put in his answer; he will then have an opportunity of averring those circumstances of law and fact which may be requisite to furnish the excuse for omitting to answer. And the court can then decide more advisedly upon the propriety of compelling the discovery.

I will dispose of this demurrer by overruling it with costs, but without prejudice to the defendant's objecting in his answer to making a discovery as to any portion of the matters of the bill other than those relative to his interest in the property insured and its shipment, with the same effect as if the objection were taken by demurrer or plea. The order may define to what extent the discovery as to interest and the shipment is made imperative by the decision.

Decree accordingly.