IN ERROR.

ALBANY,
January, 1819.

M'INTYRE
v.
MANCIUS.

---

ARCHIBALD M'INTYRE, GEORGE A. M'LEISH, DANIEL CRIEGHTON and JOHN M'INTYRE, Appellants,

*against*

GEORGE W. MANCIUS and JAMES BROWN, Respondents.

A court of chancery is ancillary to the courts of law, in compelling a discovery of facts, to aid a party in prosecuting or defending his rights at law: but it will not compel a defendant to discover that, which if he answers in the affirmative, will subject him to punishment, or render him infamous, or expose him to a penalty.

THIS was an *appeal* from the Court of Chancery.

The appellants, on the 29th of *July*, 1817, filed their bill against the respondents, stating, that on the 30th of *September*, 1816, they indorsed in blank, a certain promissory note, drawn and signed by *Daniel Dow* and *William Menzies*, in the name and firm of "*Dow & Menzies*," payable to the appellants or their order, at the bank of *New-York*, for 4,000 dollars; which note was *immediately thereafter* delivered by *Dow & Menzies*, or one of them, to the respondent, *George W. Mancius, who then became the endorsee and proprietor thereof.* That at the time the said note fell

A bill of discovery ought to state the matter relative to which the discovery is sought, the interest of the party, and the right of the plaintiff to a discovery, so far as to enable the court to see that the ends of justice require the interposition of its powers; and where the facts sought to be discovered are to be used as evidence at law, they should be so far stated as to show their pertinency and relevancy.

Where a bill of discovery stated, that the plaintiffs endorsed a promissory note drawn by *D.* for a certain sum mentioned, payable to the plaintiffs, or order, which note was immediately thereafter delivered by *D.* to *M.*, who became the sole proprietor thereof; that *B.*, a *clerk* of *M.*, was a material witness for the plaintiffs, as they are advised by counsel, and verily believe, on the trial of any suit at law against them on the note, against which they have, as advised, &c., a good and substantial defence on the merits; and that *M.* & *B.* confederating, &c. to deprive the plaintiffs of the benefit of *B*'s testimony, and to prevent them from establishing their defence against the note, &c., have brought a suit at law on the note against the plaintiffs, in the names of both *M.* & *B.*, as endorsees: and the bill charged, that the note was transferred by *D.* to *M.* solely, and who alone paid the consideration, if any, for the transfer; and that if *B.* has now any interest in the note, it has been acquired since the suit was commenced, and if before, it was colourable merely, and for the express purpose of making *B.* a party to the suit at law, so as to deprive the plaintiffs of the benefit of his testimony, &c., praying a *discovery* as to the matters so stated, and to which the defendants, *M.* & *B.*, were specially interrogated, and to which bill there was a *demurrer*: Held, that the demurrer was not well taken, but that the defendants ought to be compelled to *answer*.

due, *Dow & Menzies* had become insolvent, and have been ever since, and still are unable to pay the amount claimed on the note, in consequence whereof, the appellants will be compelled to pay the whole amount thereof, if payment should be ultimately enforced. That at the time of the transfer of the note, the same became the *sole property of Mancius, and has ever since continued to be his sole property : that he has never transferred or sold the property of the note, nor any interest therein, to the respondent, James Brown,* nor to any other person, unless it be with the fraudulent *design* hereafter mentioned. That the appellants have a good and substantial defence on the merits against the recovery of the moneys demanded on the note, as they are advised by their counsel, and verily believe. That the respondent, *Brown, (a clerk of Mancius,)* as the appellants are advised by their counsel, and verily believe, would be an important and material witness for them, on the trial of any suit brought for the recovery of the moneys claimed on the said note. That *Mancius,* in order *to deprive* the *appellants of the testimony of Brown,* and thereby prevent them from establishing their defence against the recovery of the monies claimed on the note, has caused a suit to be commenced against the appellants, as the endorsers of the note, in the Supreme Court, in the names of the respondents, as plaintiffs, claiming to be the endorsees of the said note, and the joint owners thereof, which suit is at issue. That the consideration, if any, for which the note was transferred, was paid solely by *Mancius*; that *Brown* paid no part thereof, and had no interest therein, but the note was transferred solely to *Mancius,* who was the only person interested therein. That *Mancius* has never sold to *Brown* any interest or share in the note and the moneys claimed thereon, but that *M.* is still the sole owner and proprietor of the note, *and that if M. has ever sold or transferred to Brown any interest or share in the note and the monies claimed thereon, it was after the commencement of the suit before mentioned, and whether before or after, the same was only colourable and made with the design and intention and for the express purpose of making Brown a party to the suit,* so that the appellants could not have it in their power to make use of him as a witness, and

IN ERROR.
.......
ALBANY,
January, 1819.

M'INTYRE
v.
MANCIUS.

to deprive them of the benefit of his testimony, which *Man-cius well knew would be important and material to them*, and that the said suit is brought for the sole benefit and advantage of *Mancius.* The bill stated, that the *appellants cannot discover the truth except by the answer of the respondents*, and sought a discovery, by special interrogatories, as to all the foregoing matters, and prayed an injunction to stay the suit at law, and process to appear and answer. To this bill the respondents having appeared, filed their joint and several demurrer, assigning for causes of demurrer, that the appellants in their bill did not set forth the nature of their defence to the suit at law, and that the bill does not show that the discovery sought is necessary, or would be useful for their defence to the said suit.

A petition was presented by the appellants to the Court of Chancery, at the last *September* term, for an injunction to stay proceedings in the suit at law, which was denied with costs. (*Vide* 3 *Johns. Ch. Rep.* 45.)

The demurrer was set down for argument and brought to a hearing in *November*, 1818, when his honour the Chancellor decreed, that the appellants' bill should be dismissed, with costs.

From this decree the appellants appealed to this court. His Honour the Chancellor assigned the reasons for the decree, which were the same as those given on the motion for an injunction in the same cause. (*Vide* 3 *Ch. Rep.* 45. 47.)

For the appellants it was contended, that the decree ought to be reversed:

1. Because the law did not require from the appellants a disclosure of the particular ground of defence on which they intended to rely at law.

2. Because the bill in this case states sufficient to show the pertinency and materiality of the disclosure it seeks for.

3. Because the discovery being obtained at the expense of the appellants, and it being principally for another tribunal to judge of its materiality, the bill should not have been dismissed, unless it had appeared upon the face of it, that the discovery sought for was " obviously frivolous or merely impertinent," which cannot be contended.

4. Because the discovery prayed for would be material to the appellants, on their trial at law, in many respects.

The respondents insisted that the decree ought to be affirmed :

1. Because the bill does not sufficiently state the nature of the defence of the appellants to the suit at law.

2. Because the discovery sought for may lead to a forfeiture.

3. Because, admitting that *B.* having no interest, and not being exposed to any forfeiture, is bound to answer ; yet *M.*, since the discovery as to him may lead to a forfeiture, is protected from answering : and the bill being for discovery merely, in aid of a defence at law, and not for relief, *B's* answer, admitting the facts, would be immaterial and nugatory.

4. Because *M.* and *B.* were charged with a *conspiracy.*

5. Because *B.* is charged with *maintenance.*

*Van Buren,* (Attorney General,) and *T. A. Emmet,* for the plaintiff. The demurrer admits that *Brown* is a mere nominal party, and without any interest in the suit in the Supreme Court ; and that he was made a party for the express purpose of depriving the appellants of his testimony.

The chancellor says, the matter sought for by the discovery may be immaterial or frivolous. But it is not for the court of equity to determine whether the facts discovered could be used, or how, or for what purpose. It is for the court of law to judge of their materiality, when offered in evidence, unless it appear on the face of the bill, that the discovery would be frivolous or impertinent. The discovery sought is at the cost of the plaintiffs. It is competent for a defendant to the suit at law, to show that the plaintiff is a *mala fide* holder. (*Buckland* v. *Tankard,* 5 *Term Rep.* 578.) It is true that the plaintiff, though a mere trustee, cannot be defeated, if he holds *bona fide.* But here *Brown* is made a plaintiff, for the purposes of fraud and injustice. And whether he is so or not, it is for the court at law to decide. (*Conroy* v. *Warren,* 3 *Johns. Cas.* 259.) Some of the objections now made, if they had been stated in the court below, might have been obviated, by amending the bill, so

*margin:* IN ERROR.
ALBANY, January, 1819.

M'INTYRE
v.
MANCIUS.

IN ERROR.

ALBANY,
January, 1819.

M'INTYRE
v.
MANCIUS.

as to exclude any discovery which might involve a *forfeiture*, or a penalty for *maintenance.*

The bill states nothing which can lead to the supposition, that the inquiry is for the purpose of enabling the plaintiffs to set up *usury* as a defence. The suggestion of usury is perfectly gratuitous. A court of chancery will aid a party to perpetuate the testimony of witnesses to establish usury. (*Earl of Suffolk* v. *Green*, 1 *Atk.* 450.)

The bill does not state any grounds for the allegation of a *conspiracy.* The bill does not charge *maintenance.* B. was not to have any part of the money recovered. It is neither maintenance by the statute, nor at the common law. (8 *Johns. Rep.* 223.)

The counsel cited the following authorities on the subject. 1 *Vernon*, 109. n. *Bird* v. *Hardwicke*, 2 *Ves.* 493. 1 *Atk.* 449. 1 *Caines' Cases in Error*, 5. 2 *Vern.* 442, 443. 2 *Ves.* 450. 8 *Ves.* jun. 398. 1 *Equity Cas. Abr.* 76. case 5. 2 *Madd. Ch. Rep.* 228.

*Henry*, contra, insisted, that the party asking a discovery, must disclose explicitly the object and purpose of the discovery, for he has no right to ask it, unless necessary to aid him in his suit at law. (1 *Johns. Ch. Rep.* 5. *Cooper's Eq. Pl.* 60.) The right of the party to the discovery, and its materiality, must be stated, for the purpose of preventing frivolous bills. (*Mitford's Pl.* 52. 155. 1 *Maddock's Ch. Rep.* 161.) There is no excuse for the plaintiffs' not setting out clearly their title and defence. They state that they have a substantial defence; but what is it? It may be *usury*, and then they have no right to ask a discovery. The bill charges a fraudulent design in the defendants.

The cases on this point are referred to in *Cooper's Eq. Pl.* (202, 203, 204, 205, 206, 207.) where the rules are collected, and the distinctions stated. (*Mitf. Pl.* 149. 157, 158, 1 *Madd. Ch.* 173. 1 *Atk.* 539. 1 *Bro. Ch. Rep.* 97. 14 *Ves.* 59. 65. 1 *Ves.* 246. 248. 1 *Term Rep.* 153. 1 *Johns. Ch. Rep.* 367. 439. 1 *Atk.* 450.)

A demurrer may be good as to one defendant, though bad as to another. (*Cooper's Eq. Pl.* 113. 8 *Ves.* jun. 11. 1 *Ves.* 403, 404.) The bill is for discovery, and not for relief; and if, as to *Brown*, the discovery was made, it would

not be used against *Mancius.* (2 *Ves.* jun. 11. 1 *P. Wms.*
300. 1 *Atk.* 232.)

The materiality of the defence must be shown. *Cooper's*
*Eq. Pl.* 199. *Bishop of London* v. *Fytche*, 1 *East's Rep.* 457.
n. a.) If we cannot see what the defence is, the materiality
cannot be seen.

Again ; the bill charges a *conspiracy* between the respon-
dents to deprive the appellants of the testimony of *Brown*,
and all the pretences set up are leading to that design. A
conspiracy to injure individuals is indictable. (*Hawk. P.
C.* ch. 62. s. 2. 8 *Mod.* 12. 6 *Mod.* 185. 2 Lord *Raym.*
1167.)

If it be to suppress evidence, and defeat a defence, it is
maintenance. (4 *Hawk. P. C.* 134.)

The cases in which a discovery may be compelled are;
stated by *Cooper*, (*Eq. Pl.* 157, 158.)

A demurrer admits no fact not well pleaded or set up.
(2 *Madd. Ch.* 338.)

SPENCER, Ch. J. If this were a bill of discovery in the
ordinary sense, I should entertain no doubt, but that the de-
murrer was well founded. It is a bill to discover whether
*Brown*, who is alleged to be a material witness for the ap-
pellants, on the trial of a cause pending between these par-
ties in the Supreme Court, has not been made a party col-
lusively, without having any interest in the subject matter of
the suit, and for the purpose of depriving the appellants of
the benefit of his testimony. In this view, it is a case of the
first impression and novelty, and it must be examined and
decided upon general principles, and analogies drawn from
adjudged cases.

As a general rule, a bill of discovery must state the mat-
ter in relation to which a discovery is sought, the interest of
the party, with the right to require the discovery. The
Court of Chancery acts ancillary to the courts of law, in
compelling a discovery of facts to aid a party in prosecuting
or defending his rights. But it is a fundamental rule, that it
will not compel a defendant to discover that, which, if he an-
swers in the affirmative, will subject him to punishment, or
render him infamous, or expose him to a penalty. And if

the bill require him to answer to facts of this description, he may demur to it successfully.

Does the bill in this case sufficiently state the appellants' case, the nature of the defence proposed to be aided by the discovery sought; and will the respondents be exposed to a criminal prosecution or penalty, if they answer the interrogations of the bill affirmatively; and is the discovery material?

. The bill states, that the appellants endorsed in blank, a promissory note drawn by *Dowe & Menzies*, payable to the appellants, or their order, for 4,000 dollars; that the note was immediately delivered to *Mancius*, who became the endorsee, and sole proprietor thereof; that *Brown*, a clerk to *Mancius*, is, as the appellants are advised by counsel, and as they verily believe, an important and material witness for them on the trial of any suit brought on the said note, and that they have a good and substantial defence on the merits against the said note, as they are, also, advised by counsel, and believe; that the respondents, combining and confederating together how to injure the appellants, and how to deprive them of the testimony of *Brown*, and prevent the appellants from establishing their defence against the said note, have commenced a suit thereon in the Supreme Court, in the names of both the respondents as endorsees, which suit is at issue; charging, that the consideration, if any, for which the note was transferred by *Dowe & Menzies*, was paid to them solely by *Mancius*, and that *Brown* paid no part thereof, and had no interest therein, and that if *Brown* has now any interest in the note, it was after the commencement of this suit, or if before, it was colourable and in contemplation of a suit on the note; and that *Brown's* name was thus used in the said suit, to deprive the appellants of the benefit of his testimony. Of these facts, the bill seeks a discovery, by special interrogations.

To this bill, the respondents demurred, and the Chancellor held it to be well taken, on the ground, that the bill showed no right to the discovery; that the object and purpose of the discovery was not disclosed, that it might be useless or frivolous, and that it might enable the appellants to convict the respondents of a crime, or subject them to a forfeiture.

Bills of discovery are for the purpose of gaining a knowledge of facts within the privity of the defendant, and the case must be so far disclosed as to enable the court of equity to see, and be satisfied, that the ends of justice require the interposition of its powers; and when the facts attempted to be elicited may be evidence in a court of law, it should be shown, by a statement of the case, that the facts interrogated to would be pertinent, and might be material, and hence, ordinarily, the case must be so far stated as to show the relevancy of the facts intended to be drawn forth.

IN ERROR.
••••••
ALBANY,
January, 1819.
M'INTYRE
v.
MANCIUS.

In the present case, no facts are required to be answered to, which would be evidence in the trial at law; for admitting that *Mancius* alone paid the consideration for the transfer of the note, and that *Brown* had no kind of interest in it, this would not defeat the suit at law. It might still be prosecuted in their joint names, and *Brown* be merely a trustee in part for *Mancius*. For all the purposes of the discovery sought, the bill is full and ample: The appellants seek to have *Brown* as a witness for them at law, on the ground that he has been wrongfully made a party, without any interest in the suit, and to deprive them of the benefit of his testimony; and in this view, as they ask for no facts to be used as evidence on the trial, it was, I apprehend, stating enough to allege generally, that they had a defence, of which the respondents sought to deprive them, by incapacitating their witness from testifying, by the contrivance of making him a formal party on the record.

The ordinary rules of the court cannot with propriety be applied to a case entirely aside of the common course of proceeding; and in a case of such novelty, the general principles on which discoveries will be granted, can only be regarded; and those principles ought to be applied to a new case, in furtherance of justice; and it seems to me, that the general principle that a court of equity will aid a court of law in the compelling a discovery of facts material to the defence of a party, applies with peculiar force to the present case; for we cannot but perceive, that unless *Brown* be so far disengaged from his present situation, as a party apparently interested in the suit at law, when it is alleged he has no interest in it, that gross injustice is practised,

IN ERROR.
........
ALBANY,
January, 1819

M'INTYRE
v.
MANCIUS.

without any other means of detecting or defeating it. In the case of the *Bishop of London* v. *Fytche,*(1 *Br. Ch. Rep.* 96.) Lord *Thurlow* said, that case was the first instance of a demurrer for immateriality; and that if the demurrer was to a bill where the matter was obviously frivolous, the court might interfere; and that where a man comes for a discovery of evidence material to his defence, the other party shall not protect himself against the discovery, unless he can show himself liable to penalties. I cite this case, to show, that if the appellants have a right to know whether *Brown* has an interest in the note, that a court of equity will not undertake to say, that the object of the discovery may be immaterial or frivolous; and also to show that a court of chancery will not refuse its aid upon the possibility that the discovery sought may render the party liable to penalties.

It was strongly insisted on the argument, that an answer by the respondents in the affirmative to the interrogations of the bill, would subject the respondents to punishments and penalties. for maintenance or a conspiracy. Maintenance is an officious intermeddling in a suit that in no way belongs to one, by assisting either party with money, or otherwise, to prosecute or defend it; or, strictly speaking, it is the assistance of another person in a law suit, without having any privity or concern in the subject. (*Wickham* v. *Conkling,* 8 *Johns. Rep.* 228.) There does exist a privity between *Brown* and *Mancius,* for we cannot intend that *Brown's* name is used without his consent, and he cannot incur the penalties of maintenance, for upholding a suit in which he is a party, although nominally so, for by the endorsement of the note, and the suit by the respondents as endorsees, *Brown* would acquire a legal title to a moiety of the note, and would be a trustee for *Mancius,* if he had not paid any part of the consideration money for the transfer.

A confederacy between two or more persons to injure an individual, by an act unlawful or prejudicial to the community, is a conspiracy, and is punishable as such. But the act must be unlawful; and for the reason already given, it is not an unlawful act, punishable as a crime, for a person to become the trustee of another for the collection of a note.

IN ERROR.
.......
ALBANY,
January, 1819.

M'INTYRE
v.
MANCIUS.

It was urged that the discovery sought might be for the purpose of proving by the testimony of *Brown*, that the note was given on a usurious consideration ; but no part of the bill leads to any such inquiry, and we are not at liberty, on vague conjecture, to presume any such defence.   If *Brown* has been joined as a party to the suit at law, without any interest in the subject, and for the express purpose of depriving the appellants of his evidence, it would, in my opinion, form no objection to the discovery sought for, that *Brown* might prove the note to be usurious.

The appellants had an interest in *Brown's* testimony, of which he could not deprive them, by any act of his ; and as the appellants ask no relief from the Court of Chancery, nor a discovery of usury, but merely seek to untrammel the witness, it is immaterial to the discovery what he would testify.    In the case of the *Earl of Suffolk* v. *Green and others*, (1 *Atk.* 449.) a bill was filed to perpetuate the testimony of witnesses, insisting, among other things, that a bond entered into by the plaintiff's ancestor was on a usurious contract ; the defendant demurred, for that the bill sought to subject him to a penalty, and the plaintiff had not offered to pay what was really due.   Lord *Hardwicke* considered the demurrer well taken, as regarded the charge of usury, because it would subject the party to a penalty ; but as to perpetuating the testimony, he held the demurrer to be bad, for the plaintiff was entitled to perpetuate testimony, notwithstanding his not offering to pay what was due ; and he said a man may, in many cases, bring a bill to perpetuate testimony, where he cannot bring a bill for relief without waiving the penalty.

In principle, the object of the present bill is analogous to the case decided by Lord *Hardwicke*.   The court there lent its aid to perpetuate testimony to prove usury ; and here the ground of the bill is to procure the testimony of a witness made a party for the improper purpose of depriving the appellants of his evidence.

If the facts turn out to be as alleged, that the respondents have made *Brown* a party, to prevent his being a witness, without his having any interest in the note, it is surely an attempt to pervert and evade justice ; and our laws must be

IN ERROR.
••••••
ALBANY,
January, 1819.

M'INTYRE
v.
MANCIUS.

deplorably defective, if there be no remedy in such a case. I am fully satisfied that there is a remedy, and that the court of chancery ought to have entertained the bill, and compelled an answer to it. It has, indeed, been insisted, that if the respondents answer, and admit the facts stated in the bill, that then *Brown* cannot be made a witness, so long as he remains a party to the record.

I will not anticipate the opinion of the Supreme Court on that point, further than to say, that there must be some method of making *Brown* a witness, if he has no interest in the suit at law, except what he has acquired after the appellants became entitled to his testimony.

I am of opinion that the decree of the Court of Chancery ought to be reversed.

*March* 31.

This being the opinion of the court, (BOWNE, Senator, dissenting,) it was, thereupon, ORDERED, ADJUDGED, and DECREED, that the decree of the Court of Chancery be reversed, &c.

Decree of reversal.