JOHN W. PHŒNIX, Respondent, *against* CHARLES DUPUY, Appellant.

## [TWO CASES.]

(Decided June 4th, 1877.)

The right of a party under § 391 of the (old) Code of Procedure to examine his adversary before trial, is not absolute, and such an examination will not be allowed in a case where, by the established rule before the Code, a bill for a discovery would not have been sustained in equity.[*]

The rule in equity was, that a party could not be compelled to discover any matter which might subject him to a penalty, a forfeiture, or a criminal prosecution, and accordingly *held* that a defendant could not, under § 391 of the (old) Code of Procedure, be examined as to whether he had published an alleged libel against the plaintiff.

The practice in equity as to bills of discovery and the various constructions placed upon § 391 of the Code reviewed.   Per Charles P. Daly, Chief Justice.

APPEAL by the defendant from an order of this court made at special term by Judge LARREMORE, denying a motion made by the defendant, Dupuy, to vacate an order and summons for his examination before trial, and from the order for examination.   The action was brought to recover damages for libels.   After issue joined, the plaintiff obtained an order for the examination of the defendant before trial, upon an affidavit which states the purpose of the examination derived as follows :

"Upon such examination I shall endeavor to disclose that the letters set forth in said complaint were published by said defendant ; and in malice ; were received by the parties to whom they were addressed ; and that in consequence said plaintiff has been injured as alleged in said complaint ; and furthermore the same is necessary to enable this plaintiff to successfully prosecute his suit, inasmuch as all the same said facts are not admitted in said answer."

[*] See § 870, *et seq.* of new Code of Civil Procedure.

*Geo. W. Van Siclen,* for appellant.

*Charles Meyer,* for respondent. The testimony sought to be obtained from the defendant is perfectly proper in itself. If there be an objection to it, that it would tend to criminate the witness, that is a personal privilege to him which he can exercise, *and he alone,* and *when examined,* not before. And it must be claimed under oath. (*Parry* v. *Almond,* 12 Serg. & Rawle, 284; *U. S.* v. *Burr,* 1 Robertson's Trials, 207, 208, 242 to 245.) Under the old practice the interrogatories were substantially proposed by the *bill* of discovery, and the objections were properly entered to the interrogatories (i. e. issue joined upon the bill) then; but under § 391 of the Code, these objections could not be interposed upon the granting of the order of examination, inasmuch as no interrogatories are then proposed.

CHARLES P. DALY, Chief Justice.—The examination of an adverse party before trial, provided for by the § 391 of the Code, is a substitute for the former remedy by bill of discovery, which was abolished by this chapter of the Code, and may be had where a bill for a discovery would previously have been sustained. (*Carr* v. *Great W. Ins. Co.,* 3 Daly, 160; *King* v. *Leighton,* 58 N. Y. 383; *Glenney* v. *Stedwell* [Court of Appeals], 1 Abb. N. C. 327, and note 332; *Wiggin* v. *Gans,* 4 Sandf. 647.)

This remedy was formerly the only way in which proof of a fact exclusively within the knowledge of one of the parties could be obtained, because parties, in actions at law, could not then, as they can now, be called as witnesses upon the trial. It was, moreover, the only effectual mode of getting at a knowledge of the contents of documents which were in the possession of the other party, and of proving what they contained; for the relief which courts of law could afford was limited and attended with many difficulties before the statute was enacted, for compelling the production and inspection of books and papers, by a motion before trial.

The statutory provision allowing parties to be examined as witnesses, either on their own behalf or by the adverse party, and of compelling, by motion, the inspection of books and papers, have to a great degree dispensed with the necessity of this discovery of evidence before trial, although the right to it remains the same as before. In view of the abuses that would arise if a party, either before any action was brought, or before he had stated his cause of action in a pleading, or after an answer had been served, were allowed, without any restriction or limitation, to subject the other party to an inquisitorial investigation under oath, to ascertain whether he could make out a cause of action, or whether his adversary could probably succeed in establishing a defense, courts of equity, at an early period, imposed limits to such investigations, by requiring that it should appear by the bill, that the matter sought to be discovered was essential to the establishment of a cause of action or of a defense.

"A system of judicial inquiry," says Mr. Hare, "would be obviously defective, which had no means of obtaining and compelling a production of evidence from the parties themselves, whilst a system which should set no bounds to the power of scrutiny would be fertile in expedients of oppression," and in respect to the rules and principles by which courts of equity were guided in allowing or refusing such discoveries, he further remarks, "They are the result of that scrupulous care with which a long succession of eminent judges have asserted the power of judicial investigation without sacrificing the security and secrecy which all are entitled to claim and to preserve. They define and reconcile the rights of individual privacy and the demands of public justice. They express the extent of the privilege," whilst the limits they impose are "identified with the administration of justice and depend upon principles which are perpetual." (Hare on Discovery, XI, XII, XIII.)

Bills for the discovery of evidence, being, however, expensive and dilatory, were so seldom resorted to, after the inspection of documents could be compelled by motion, and

especially after parties could in all cases be examined as witnesses, that the object of this provision in the Code, abolishing such bills and substituting in their stead the simple and inexpensive procedure provided for by the § 391, was not understood. By many it was interpreted literally, as giving the right to examine the party before trial without any restriction or limitation whatever; wholly overlooking the history of this branch of jurisprudence, and the abuses, injustice and oppression that could be practised if that were permitted. Judge I. L. Mason, it is true, shortly after its enactment, declared, in *Wiggin* v. *Gans* (4 Sandf. 647), that this provision was a substitute for bills of discovery and nothing else; "that the examination referred to in it, meant upon every fair principle of interpretation, any examination for the purpose of discovery, in which formerly a bill of discovery would have been resorted to;" and that "wherever a bill of discovery could have been filed under the former practice in support or defense of an action, there the party might be examined in the mode presented in this chapter, and in no other mode." But this interpretation was not followed; and it was held in subsequent cases, as it had been previously held, that upon a simple notice of five days, given by the opposite party, except the judge should by order fix a different time, a party was compelled before the trial to appear before the judge, at the time and place specified, and be examined under oath as a witness. (*Taggard* v. *Gardner*, 2 Sandf. 669; *Green* v. *Wood*, 15 How. Pr. 342; *Cook* v. *Bidwell*, 29 id. 483.)

In *Garrison* v. *The Mariposa Co.* (N. Y. Com. Pleas, Sp. T. 1868), I declined to follow these cases, and held, as Judge Mason had held, that it was simply a substitute for the former remedy by bill of discovery; that it was consequently subject to the rules and principles that courts of equity had applied to prevent abuse, oppression, or injustice, and could not be had without an affidavit, showing that the discovery sought was of some matter material to the establishment of a cause of action or a defense; so that the party could know exactly what he was called upon to discover; that he might,

as in a bill of discovery, object to it as immaterial or improper, or if willing to do so, admit it; or if he were examined, that the judge might confine the investigation within the limits of the discovery sought; and see *Carr* v. *G. W. Ins. Co.*, 3 Daly, 160.

The effect of holding that this examination of a party before trial was an absolute right, without any qualification or restriction, soon became apparent where the party summoned his adversary to be examined in this way, before any complaint was filed, and where the judge had nothing before him to indicate what the examination was to be about, and was left wholly without guide as to its extent, range or purpose. In view of this difficulty, and of the consequences to which it would lead, it was held in a large number of cases, from *Chichester* v. *Livingston* (3 Sandf. 718) to *Norton* v. *Abbott* (28 How. Pr. 388), that this examination could not be had at all until after issue joined. But this did not suffice. In later cases, this construction, for which there never was any foundation, was not adhered to, and it was held that the examination might be had either before or after issue joined (*McVickar* v. *Ketchum*, 1 Abb. N. S. 452; *Bell* v. *Richmond*, 50 Barb. 571); and to meet, under this interpretation, the difficulty before suggested, it was held, first by Barbour, J., in *Greene* v. *Herder* (7 Robt. 455), that if the application is made before the service of a complaint, it must be upon an affidavit stating:—(1) if made by the plaintiff, the nature of the action and demand; (2) if made by the defendant, the nature of his defence; (3) the name and residence of the witness; and afterwards, by Jones, J., in *Duffy* v. *Lynch* (36 How. Pr. 509), that it must be upon an affidavit setting forth with particularity the facts and circumstances out of which the plaintiff supposes the cause of action to have arisen, the relief he supposes he is entitled to, the defense he anticipates, and the subjects upon which he desires to interrogate the other party; and this conflict of decisions led to the adoption, by the convention of judges, in 1870, of the 21st rule, the requirements of which were, in effect, to construe the § 391, as providing for the kind of discovery by the examination of

a party before trial, which was formerly obtained by a bill in equity, and so far as it is applicable, the practice which prevailed in equity is necessarily the guide as to the extent and nature of the discovery to which the party is entitled by such an examination.

I have entered thus at length into an examination of this subject, and of the contrariety of views and the confusion that has prevailed respecting the object of this section, for the reason that even now scarcely a week passes in this court without an application being made for the examination of a party under it, without anything being presented but an order for his examination at a specified time and place; so difficult has it been to impress upon practitioners that they have not the right to bring a party up in this way before trial, and require him to answer under oath any questions that they think proper to put to him.

In equity, a party was allowed to discover from his adversary any matter which was material to the establishment of his cause of action or of his defense, although he might have other witnesses to prove it, as the admission of the matter would dispense with the necessity of calling the witnesses; and it was no answer to the application that the other party might be examined as a witness on the trial, for the one filing the bill was not bound to call him as a witness on the trial, but might have a discovery previously from him as a party. (*Plummer* v. *May*, 1 Ves. Sr. 426; *Montague* v. *Dudman*, 2 id. 398; *Finch* v. *Finch*, id. 492; *Tooth* v. *Dean of Canterbury*, 3 Sim. 49; *March* v. *Davison*, 9 Paige, 601; Story's Eq. Pleadings, § 119 and note; Wigram on Discovery, 2, 4; Hare on Discovery, 1, 110, 116, 187.) And that this was what was meant by the codifiers in framing this section, appears from their referring in their report to " the great benefits to be expected by the relief it would afford to the rest of the community by exempting them from attending as witnesses to prove facts which the parties respectively know and ought never to dispute." (First Report of Coms., pp. 244, 245.) That the party from whom the discovery was sought might be protected, the one filing the bill was

obliged to show, not only that the matter sought to be discovered was material, but how it was material (*McIntyre* v. *Mancius*, 3 Johns. C. R. 47 ; id. in error, 16 Johns. 592; *Kimberly* v. *Sells*, 3 Johns. C. R. 467 ; *Lane* v. *Stebbins*, 9 Paige, 624, 625) ; and, as a further protection, a discovery was not allowed as to certain matter to which I shall have occasion to recur.

The affidavits on which the orders for the defendant's examination in these two cases, before trial, were granted, state that the plaintiff will endeavor, upon such examination, to disclose that the letters which constitute the libel for which the actions are brought were published by the defendant ; that they were published in malice ; that they were received by the parties to whom they were addressed, and that in consequence the plaintiff was injured.

The letters being libellous, the law would imply that there was malice, and that the plaintiff was injured by their publication ; and as no fact is stated in the affidavit showing a tendency to show actual malice, or special damage, the discovery sought is reduced to the inquiry whether the defendant published the letters, and to whom he sent them. The discovery which the plaintiff seeks is to compel the defendant to disclose whether he has published a libel, or, in other words, whether he has been guilty of a criminal offense for which he could be indicted and punished.

In the restriction imposed upon this right of discovery, nothing was better settled than that a party could not be compelled to discover any matter which might subject him to a penalty, a forfeiture, or a criminal prosecution. (Hare on Discovery, part III. c. 1, § 1 ; Wigram on Discovery, p. 60, §§ 83 to 94.) " A plaintiff," says Mr. Wigram, " whatever the merit of his case may be, is not entitled to a discovery from the defendant of any matter which would criminate him or tend to do so." (Wigram on Discovery, p. 195.) Lord Eldon, in *Paxton* v. *Douglas* (19 Ves. 226), went even farther, saying : " The strong inclination of my mind is to protect the party against answering any question, not only that has a direct tendency to criminate him, but that forms *one step* to-

wards it." In *Baily v. Dean* (5 Barb. 303), Judge Pratt was of opinion that a defendant could not be compelled to disclose facts to enable a plaintiff to sustain an action of slander, because in such actions, punitory damages may be given ; and in *Brownsword* v. *Edwards* (2 Ves. Sr. 246), Lord Hardwicke said, that the court would not force the party by his own oath to subject himself to punishment for usury. And see *March* v. *Davison* (9 Paige, 585) ; *Taylor* v. *Bruen* (2 Barb. Ch. 301) ; *In the Matter of Tappan* (36 How. Pr. 394) ; *The People* v. *Mather* (4 Wend. 254); *In the Matter of Kip* (1 Paige, 607).

It is apparent upon the face of the affidavits that the plaintiff had no right to the discovery sought, and both orders should therefore be vacated.

LARREMORE, J., concurred.

Ordered accordingly.