(Supreme Court, Special Term, Albany County. July, 1897.)

1. CONSTITUTIONAL LAW—JUDICIAL POWERS AND FUNCTIONS.

Laws 1897, c. 383, §§ 4–8, providing that a justice of the supreme court may order certain persons to appear and give testimony for the sole purpose of enabling the attorney general to determine the propriety of beginning an action with a view to enforcing the antimonopoly law (sections 1, 2), are repugnant to Const. art. 6, § 1, providing that the supreme court "has general jurisdiction in. law and equity," and section 10, providing that "the justices of the supreme court shall not hold any other office or public trust," and .that "all votes for any of them for any other than a judicial office, given by the legislature or the people, shall be void," as the constitution, in effect, prohibits the exercise of nonjudicial functions by the supreme court.

2. CRIMINAL LAW—COMPELLING EVIDENCE AGAINST ONE'S SELF.

Laws 1897, c. 383, §§ 4–8, giving a referee summary power to compel a witness to testify respecting his knowledge of a violation of sections 1–3, prohibiting monopolies, are repugnant to Const. art. 1, § 6, providing that "no person * * * shall be compelled in any criminal case to be a witness against himself," in view of section. 7, providing that such witness cannot be excused from answering questions on the ground that it may tend to convict him of a violation of the law, which by section 2 is made a misdemeanor, notwithstanding section 7 provides that such testimony shall not be given against him in any criminal action, and that no criminal action shall. be brought on account of such testimony, especially as to a witness connected with such violation.

3. WITNESSES—PRELIMINARY EXAMINATION—SUFFICIENCY OF APPLICATION.

In view of Laws 1897, c. 383, § 4, providing that in order to obtain an order for the preliminary examination of witnesses having knowledge of a violation of sections 1–3, prohibiting monopolies, it is necessary to comply with Code Civ. Proc. c. 9, tit. 3, art. 1 (sections 870–886), requiring an affidavit of the facts upon which a court is to act in giving an order for the examination of witnesses, before trial, a petition for such an order cannot.

be granted where the facts are stated upon information and belief, without stating the grounds for such belief, especially in view of said chapter 383. § 5, providing that the order shall be granted if the justice is satisfied that it is necessary.

Application of the attorney general for an order requiring Samuel Sloan and others to appear and submit to an examination under the "Antimonopoly Law," so called. The order was granted, and defendants therein move to have it vacated. Motion granted.

David Willcox and Lewis E. Carr, for Robert M. Olyphant.

David McClure, for Samuel Sloan.

Robert W. De Forest, for J. Rodgers Maxwell.

John B. Kerr, for Thomas P. Fowler,—all for the motion.

T. E. Hancock, Atty. Gen., and John 'C. Davies, Dep. Atty. Gen. (J. Newton Fiero, of counsel), opposed.

CHESTER, J.　　This is a motion to vacate an order granted by me on the 12th day of May, 1897, on the ex parte application of the attorney general, requiring Samuel Sloan and five other persons named in the order to appear before a referee therein named to answer such relevant or material questions as may be put to them concerning any alleged illegal contract, arrangement, or combination in violation of chapter 383 of the Laws of 1897, or of chapter 384 of the Laws of 1897. The petition of the attorney general under which he procured the order sought to be vacated was presented under the provisions of chapter 383 of the Laws of 1897, which is entitled "An act to prevent monopolies in articles or commodities of common use, and to prohibit restraints of trade and commerce, providing penalties for violations of the provisions of this act, and procedure to enable the attorney-general to secure testimony in relation thereto," which act became a law May 7, 1897, and took effect immediately. The substantive provisions of the act are contained in the first two sections, which are as follows:

"Section 1. Every contract, agreement, arrangement, or combination whereby a monopoly in the manufacture, production or sale in this state of any article or commodity of common use is or may be created, established or maintained, or whereby competition in this state in the supply or price of any such article or commodity is or may be restrained or prevented, or whereby for the purpose of creating, establishing or maintaining a monopoly within this state of the manufacture, production or sale of any such article or commodity, the free pursuit in this state of any lawful business, trade or occupation is or may be restricted or prevented, is hereby declared to be against public policy, illegal and void.

"Sec. 2. Every person or corporation, or any officer or agent thereof, who shall make or attempt to make or enter into any such contract, agreement, arrangement or combination, or who within this state shall do any act pursuant thereto, or in, toward or for the consummation thereof, wherever the same may have been made, is guilty of a misdemeanor, and on conviction thereof shall, if a natural person, be punished by a fine not exceeding $5,000, or by imprisonment for not longer than one year, or by both such fine and imprisonment; and if a corporation, by a fine of not exceeding $5,000."

The balance of the act, except the repealing clause and the statement of the time when it is to take effect, relates wholly to procedure. The following is a brief summary of these provisions of the act: Section 3 authorizes the attorney general to bring an action in the name of the people to restrain the doing in this state of any act herein de-

clared to be illegal, or any act for the making or consummation of the prohibited combinations, wherever the same may have been made. Section 4 clothes the attorney general with power to examine and procure the testimony of witnesses in the manner provided in the act, for the purpose of determining whether he should commence an action or proceeding, and makes the provisions of the Code of Civil Procedure relative to the examination of witnesses before the commencement of an action, and the conduct of such examination, applicable, so far as practicable, to an action or proceeding instituted by the attorney general pursuant to the act. Section 5 provides that, whenever the attorney general deems it necessary or proper to procure testimony before beginning an action or proceeding, he may present to a justice of the supreme court an application, in writing, for an order directing such persons as the attorney general may require to appear before the justice, or a referee designated in the order, for examination, and provides that, if it appears to the satisfaction of the justice to whom the application is made that such an order is necessary, then such order shall be granted. The section further provides that the order shall be granted without notice unless notice is required to be given by the justice to whom the application is made. Section 6 authorizes the attorney general to indorse upon the copy of the order served upon the person required to appear and be examined a notice stating the time and place of the examination, and a clause requiring such person to produce on such examination all books, papers, and documents in his possession or under his control relating to the subject of such examination. And the section further contains provisions with reference to the service of the order, and a payment or tendering to the witness his fees allowed by law. Section 7 provides that the testimony of each witness must be subscribed by him, and that all testimony taken by such justice or referee must be certified and delivered to the attorney general at the close of the examination. It also provides that the testimony given by a witness in a proceeding or examination under the act shall not be given in evidence against him in any criminal action or proceeding, nor shall any criminal action or proceeding be brought against such witness on account of the testimony so given by him, nor shall any person be excused from answering any questions that may be put to him on the ground that it may tend to convict him of a violation of the provisions of the act. Section 8 confers upon the referee appointed as provided in the act all the powers, and makes him subject to all the duties, of a referee appointed under section 1018 of the Code of Civil Procedure, so far as practicable, and authorizes him to punish for contempt a witness duly served, for nonattendance or refusal to be sworn or to testify, or to produce books, papers, and documents according to the direction of the attorney general in his indorsement aforesaid, in the same manner and to the same extent as a referee appointed to hear, try, and determine an issue of fact or of law. Section 9 repeals chapter 716, Laws 1893, entitled "An act to prevent monopolies in articles of general necessity," and also chapter 267, Laws 1896, the latter act being amendatory of the former. By this repeal the legislation of 1897 is substituted for that heretofore existing upon the subject.

Upon the argument and in the extended briefs submitted by counsel in support of this motion, very able and learned attacks have been made upon the constitutionality of the substantive provisions contained in the first and second sections of the act. Some of the more prominent of the recent cases where acts to prevent monopolies in commodities of common use, or to prohibit restraints of trade and commerce, have been called in question, are Arnot v. Coal Co., 68 N. Y. 558, Judd v. Harrington, 139 N. Y. 105, 34 N. E. 790, People v. Sheldon, 139 N. Y. 251, 34 N. E. 785, People v. Milk Exchange, 145 N. Y. 267, 39 N. E. 1062, in the court of appeals, and the still later case of U. S. v. Trans-Missouri Freight Ass'n, 166 U. S. 290, 17 Sup. Ct. 540, in the United States supreme court. In each of these cases the legislation brought in question was sustained by the courts, and the contract condemned. Rapallo, J., in writing the opinion of the court of appeals in Arnot v. Coal Co., supra, which involved a contract where one producer of coal, for the purpose of ennancing the price, entered into a contract with another producer binding the latter to keep his supply out of the market, says at page 565:

"That a combination to effect such a purpose is inimical to the interests of the public, and that all contracts designed to effect such an end are contrary to public policy, and therefore illegal, is too well settled by adjudicated cases to be questioned at this day."

O'Brien, J., in writing the opinion of the same court in Judd v. Harrington, supra, says at page 109, 139 N. Y., and page 791, 34 N. E., with reference to the agreement involved in that case:

"The real purpose and intent of the agreement was to suppress competition in an article of food; and, as such agreements tend to enhance the price, they are regarded as detrimental to the public interest, and forbidden by public policy. That such agreements are illegal and void has been settled by the decisions of the courts from the earliest times."

In view of these authorities, and many others that might be cited, I should want to give very deliberate consideration to the claim made upon the argument, that the substantive provisions of this act are much broader in scope than the statutes which they displace, and therefore are not covered by the guiding principles of the cases referred to, before coming to the conclusion that the legislature was powerless, because of constitutional restrictions, to declare the agreements or combinations specified in section 1 of the act in question to be against public policy, illegal, and void, or to declare, as has been done in section 2, that a person or corporation who violates these provisions, or who, within this state, shall do any act pursuant thereto, or in, toward, or for the consummation thereof, is guilty of a misdemeanor. While the authorities referred to tend very strongly to support the constitutionality of these substantive provisions, I do not deem it necessary on this motion to determine any of the questions presented with reference to their constitutionality, for the reason that some of the objections urged against those provisions of the act which relate wholly to the procedure attempted to be authorized thereby are, in my opinion, decisive of the case.

It seems to me very clear, in the first place, that there is an attempt in this act to impose upon the justices of the supreme court non-

judicial functions, which cannot be sustained. Under our state system of government, as well as under the federal system, the respective constitutions provide for a complete separation between the executive, the legislative, and the judicial power, and each of these powers is independent of each of the others. Each of these branches of the government is of equal dignity and power, and neither can properly be required to perform any functions appertaining to either of the others which are not expressly provided for. These are elementary principles of constitutional law relating to our system of government. While the supreme court of the state exists without any constitutional or statutory provisions precisely defining its jurisdiction, except the constitutional provision that "it has general jurisdiction in law and equity" (Const. art. 6, § 1), the intention that its functions should be strictly judicial is clearly indicated by the provisions that "the justices of the supreme court shall not hold any other office or public trust," and "all votes for any of them for any other than a judicial office, given by the legislature or the people, shall be void" (Id. § 10). The court of appeals has held that the legislature cannot limit that jurisdiction. People v. Nichols, 79 N. Y. 582. It would seem equally clear from the general principles above stated that the legislature cannot impose upon the court or the justices thereof functions of a nonjudicial character. Judge Cooley, in his Principles of Constitutional Law (2d Ed. p. 51), says, "Upon judges, as such, no functions can be imposed except those of a judicial nature." Judge Story, in his work on the Constitution (section 1571), says, "The judicial department * * * of the government can be called upon only to decide controversies brought before them in a legal form." This principle appears to have frequently been applied when the legislative department has sought to impose upon the judiciary nonjudicial actions, such as taking testimony for the use or information of administrative officers. I content myself with a reference to some of the cases holding this principle, without taking the time to review them: Hayburn's Case, 2 Dall. 409; U. S. v. Todd, 13 How. 52; U. S. v. Ferreira, 13 How. 40; Gordon v. U. S., 2 Wall. 561, and 117 U. S. 697; In re Sanborn, 148 U. S. 222, 13 Sup. Ct. 577; Interstate Commerce Commission v. Brimson, 154 U. S. 447, 14 Sup. Ct. 1125; People v. Waters, 4 Misc. Rep. 1, 23 N. Y. Supp. 691; In re Supervisors of Election, 114 Mass. 247; Munday v. Assessors, 43 N. J. Law, 338; Ex parte Griffiths, 118 Ind. 83, 20 N. E. 513; Houseman v. Circuit Judge, 58 Mich. 364, 25 N. W. 369; In re Application of Senate, 10 Minn. 78 (Gil. 56).

The attorney general is one of the administrative officers of the state, having an important relation to the executive department of the government. This act provides, in substance, that, for the purpose of determining whether an action or proceeding should be commenced, the attorney general may examine and procure the testimony of witnesses in the manner herein prescribed, and, whenever he deems it necessary or proper to procure testimony before beginning an action or proceeding, he may present to any justice of the supreme court an application in writing for an order directing such persons as he may require to appear before the justice, or a referee designated in the order, and answer such relevant and material questions as may be put

to them concerning any alleged illegal contract. arrangement, agreement, or combination in violation of the act. If it appears to the satisfaction of the justice to whom the application for the order is made that such an order is necessary, then such order shall be granted. The testimony taken by the justice or referee must be certified and delivered to the attorney general at the close of the examination. It thus appears clearly that the examination authorized by the act is merely to aid the attorney general in determining the question as to whether or not he should commence an action. This is clearly an administrative function, and one which simply aids the attorney general to determine a question relating wholly to the proper discharge by him of a public duty. The testimony is not required to be filed in court. It is merely turned over to the attorney general for his information. Until an action or proceeding is brought there is no controversy in court, no issues, and no parties. The justice to whom the application is made performs no functions, save either to take the testimony himself, or to appoint a referee for that purpose. If he appoints a referee, the justice has no other or further relation to the matter whatever. There is no cross-examination of the witnesses; the testimony, if it can properly be called such, could not be used in an action or in any proceeding; and the application leads to no judgment or determination of the court. The duties imposed by the statute upon the justices are therefore not judicial, but are merely ancillary or auxiliary to the attorney general in the performance of his duties. This being the case, guided by the principles and authorities above mentioned, I think it was beyond the constitutional power of the legislature to devolve these duties upon justices of the supreme court.

In the next place, I think the procedure sought to be authorized in this statute presents an instance of a serious infraction of the constitutional rights and privileges of a witness charged with a crime. The act provides that no person shall be excused from answering any question that may be put to him on the ground that it may tend to convict him of a violation of the provisions of the act. Section 7. A violation of the provisions of the act is expressly made by section 2 a misdemeanor, and on conviction thereof the person is punishable by a fine or imprisonment, or by both such fine and imprisonment. The constitution of the state (article 1, § 6) provides that "no person * * * shall be compelled in any criminal case to be a witness against himself." This same provision is carried into the fifth amendment of the constitution of the United States. It is also an ancient principle of the law of evidence that a witness shall not be compelled in any proceeding to make disclosures or to give testimony which will tend to criminate him or subject him to fines, penalties, or forfeitures. Rex v. Slaney, 5 Car. & P. 213; 1 Greenl. Ev. § 451; Whart. Cr. Ev. (9th Ed.) 461; Southard v. Rexford, 6 Cow. 254; People v. Mather, 4 Wend. 229. O'Brien, J., in People v. Forbes, 143 N. Y. 219, 38 N. E. 303, after referring to these constitutional provisions, and mentioning the fact that they had been incorporated into the Codes of Civil and Criminal Procedure in this state (Code Civ. Proc. § 837; Code Cr. Proc. § 10), says at page 227, 143 N. Y., and page 305, 38 N. E.:

"These constitutional and statutory provisions have long been regarded as safeguards of civil liberty, quite as sacred and important as the privileges of the writ of habeas corpus, or any of the other fundamental guaranties for the protection of personal rights. When a proper case arises they should be applied in a broad and liberal spirit, in order to secure to the citizen that immunity from every species of self-accusation implied in the brief but comprehensive language in which they are expressed. * * * The right of a witness to claim the benefit of these provisions has frequently been the subject of adjudication in both the federal and state courts. The principle established by these decisions is that no one shall be compelled in any judicial or other proceeding against himself, or upon the trial of issues between others, to disclose facts or circumstances that can be used against him as admissions tending to prove his guilt or connection with any criminal offense of which he may then or afterwards be charged, or the sources from which, or the means by which, evidence of its commission, or of his connection with it, may be obtained. * * * The question was fully discussed at an early day by Chief Justice Marshall, on the trial of Aaron Burr [25 Fed. Cas. p. 40], and every phase of it so completely explained and exhausted that his views were followed in the subsequent decisions. A single quotation from the language used will illustrate the scope and extent of the immunity which the witness can lawfully claim: 'Many links frequently compose that chain of testimony which is necessary to convict an individual of a crime. It appears to the court to be the true sense of the rule that no witness is compelled to furnish any one of them against himself. It is certainly not only a possible but a probable case that a witness, by disclosing a single fact, may complete the testimony against himself, and, to a very effectual purpose, accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself would be unavailing, but all other facts without it would be insufficient. While that remains concealed in his own bosom he is safe, but draw it from thence and he is exposed to a prosecution. The rule that declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description. * * *' It seems that in such cases nothing short of absolute immunity from prosecution can take the place of the privilege by which the law affords protection to the witness." 143 N. Y. 227–229, 38 N. E. 305.

An attempt has apparently been made in the statute in question to give immunity to the witnesses. In section 7 it is provided that:

"The testimony given by a witness in a proceeding or examination under this act shall not be given in evidence against him in any criminal action or proceeding, nor shall any criminal action or proceeding be brought against such witness on account of the testimony so given by him."

This language comes far short, in my opinion, from giving absolute immunity to the witness from prosecution. It is provided that no criminal action or proceeding shall be brought against him on account of the testimony so given by him. This would undoubtedly serve to protect him from an indictment or prosecution for perjury because of the alleged falsity of his testimony. but it would not protect him from an indictment, prosecution, or punishment for a violation of the provisions of the act, which violation might be disclosed by facts or circumstances appearing in the testimony drawn from him under the compulsion of this examination, and in relation to which the law expressly states that he shall not be excused from testifying. The act contains no immunity from the prosecution of the witness for the crime which is sought to be discovered by the examination, and the discovery of which is the chief purpose of the examination.

It is urged here in support of the order which has been made that it will be time to determine whether the testimony of the witnesses

is privileged when the examination begins, and a question is asked, the answer to which might tend to criminate. If at that stage of the matter the witness was before a court where his constitutional rights could be protected, there might be some force in the suggestion; but under the statute in question the legislature has assumed to give power to the referee to summarily punish the witness for contempt in refusing to be sworn or to testify, or to produce books, papers, and documents according to the direction of the attorney general. The attorney general has indorsed a direction upon the order requiring each of the witnesses to produce on the examination all books, papers, and documents in his possession or under his control relating in any way to an alleged contract or agreement entered into through or by him, or corporations represented by him, for the purpose of limiting the production of anthracite coal. So that here is the concession and claim on the part of the attorney general that these very witnesses were concerned in the agreement, the discovery of which is sought by the proposed examination. This discovery cannot be had from the mouths of the witnesses concerned in the alleged agreement, if constitutional safeguards are to be regarded. It has frequently been held in this state, under those provisions of the Code of Civil Procedure authorizing the examination of a party or witness before trial, that where it clearly appears that the only material evidence sought by the examination will tend to show that the witness is guilty of a crime the order to examine should be vacated upon the motion of the witness, without waiting for him to plead his privilege. Burbank v. Reed, 11 N. Y. Wkly. Dig. 576; Manufacturing Co. v. Bridgman, 14 Hun, 122; Kinney v. Roberts, 26 Hun, 166, 89 N. Y. 601; Trading Co. v. Brown, 27 Hun, 248; Andrews v. Prince, 31 Hun, 233; Skinner v. Steele, 88 Hun, 309, at page 311, 34 N. Y. Supp. 748; Abbott-Downing Co. v. Faber, 87 Hun, 299, 34 N. Y. Supp. 433; Phœnix v. Dupuy, 2 Abb. N. C. 146, 158; Corbett v. De Comeau, 5 Abb. N. C. 169, 44 N. Y. Super. Ct. 306; Roberts v. Publishing Co. (Super. N. Y.) 8 N. Y. Supp. 870. If a corporation is to be a defendant, its officers are excused from testifying for the same reason. Davies v. Bank, 16 Civ. Proc. R. 68, 4 N. Y. Supp. 373.

The further objection is made that this order cannot be sustained because of the insufficiency of the petition under which the order was granted, even though the power to grant the order was properly devolved by the legislature upon justices. The provisions of article 1 of title 3 of chapter 9 of the Code of Civil Procedure (sections 870–886), relating to the application for an order for the examination of witnesses before the commencement of an action or before trial, and the conduct of such examination, are made by the act in question to apply, so far as practicable, to an action or proceeding by the attorney general under this act. Laws 1897, c. 383, § 4. An examination of the petition shows that there is an entire failure to state any fact required by these provisions of the Code, except the statement, made upon information and belief, without stating any sources of information or any grounds for the belief, that "heretofore certain railroads and other corporations, foreign and domestic, entered into a certain alleged illegal contract, arrangement, agreement, or combination

limiting the production of anthracite coal," and the further statement, also made on information and belief, without stating the sources of the information or the ground of the belief, "that Samuel Sloan, Robert M. Olyphant, and Thomas P. Fowler, each residing in New York City, J. Rodgers Maxwell, residing in Brooklyn, Joseph S. Harris and Elisha P. Wilbur, each having an office in New York City," have knowledge and information as to such illegal contract. It is also stated that "it is not practicable to set out with greater particularity any of the matters required by the Code of Civil Procedure on like applications." It will be observed that these statements do not amount to such proof of any fact as would be admissible in a court of justice. Indeed, the learned counsel for the attorney general argues that no formality is contemplated under the provisions of this law by way of either affidavit or petition for the order to examine, and that a mere application in writing, without setting out any facts whatever, would entirely satisfy the provisions of the statute. If this position is correct, the purpose of the legislature in making the provisions of the Code of Civil Procedure apply so far as practicable is hardly apparent; and this position also requires no force whatever to be given to the provision in the law that "if it appears to the satisfaction of the justice of the supreme court to whom the application for the order is made, that such order is necessary, then such order shall be granted." The reasoning of the attorney general removes the question as to whether or not it is practicable in this specific case to comply with the provisions of the Code of Civil Procedure from the determination of the justice, and takes the determination of that question entirely upon himself. The law, I think, intended that the determination of this question should rest with the justice, if he could lawfully exercise the power at all. It is a well-settled rule that orders for preliminary examinations of witnesses or for the production of documents are in all cases discretionary. Bank v. Sheehan, 101 N. Y. 176, 4 N. E. 333; Jenkins v. Putnam, 106 N. Y. 272, 12 N. E. 613. That it was the intention of the legislature not to interfere with this salutary rule is made entirely clear from the provision of the law that "it must appear to the satisfaction of the justice of the supreme court, to whom the application for the order is made, that such an order is necessary."

The contention that the order must be granted by the justice, not because any proof is submitted to him from which he can be satisfied as to its necessity, but merely because the justice is informed by the attorney general in writing that "he deems it necessary and proper," emphasizes, and in fact concedes, the proposition that the functions sought to be imposed upon the justices are not judicial, but merely administrative. The right to the examination, if it exists at all, is a purely statutory one, and the precise provisions of the statute must be followed. Heishon v. Insurance Co., 77 N. Y. 278; Balcom v. Adams, 2 N. Y. Supp. 255. I conclude, for the reasons already given, that the order cannot be sustained. It is therefore unnecessary to examine the many other objections urged by counsel against its validity.

Motion granted and order vacated.