WILLIAM J. KING, Jr., Respondent, v. THOMAS LEIGHTON, Appellant.

The provision of the Code (§ 401, sub. 7), providing a compulsory method for obtaining the affidavit of a person necessary to be used upon a motion, does not include the parties to the action; nor is a party compelled to submit to an examination before a referee where a question of fact arises and a reference is ordered, upon an application for a discovery of books and papers. (§ 271, sub. 3.)

A party to an action cannot be compelled to submit to an examination at the instance of the adverse party, save as a general witness in the cause as prescribed by the Code. (§§ 389–397.)

(Argued September 22, 1874; decided September 29, 1874.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, affirming an order of Special Term appointing a referee to take " the testimony of defendant and such other persons as shall be subpenaed before him relative to the existence, custody, disposition and control of the books and papers " of the firm of Thomas Leighton & Co.

This action was brought for an accounting as to the partnership business of said firm of Thomas Leighton & Co., of which firm the parties were the partners.

Upon an affidavit showing the necessity of his having the books and papers of the firm to enable him to prepare the action for trial, plaintiff procured an order for the defendant to show cause why he should not deposit the books and papers in the Erie county clerk's office; and in case possession of the books be denied by the defendant, why he should not

be directed to appear before a referee to be appointed, and then be orally examined as to their whereabouts. Defendant appeared at the time specified in the order, in opposition. He made affidavit, in substance, denying possession of the books and papers, and also produced the affidavit of one Allison, who swore, in substance, that he had burned and destroyed them "as of no value, the matters to which they related having been settled up and ended." Whereupon the order in question was made.

*Geo. F. Danforth* for the appellant. Defendant having denied, on oath, possession or control of any of the books or papers the court should have vacated the order to show cause. (2 R. S., 199, § 24, sub. 3; *Ahoyke* v. *Wolcott*, 4 Abb., 41; *Wood* v. *Figaniere*, 1 Robt., 681; *Hoyt* v. *Am. Ex. Bk.*, 1 Duer, 652; *Gould* v. *McCarthy*, 11 N. Y., 575.) The court had no power to order a reference to take the testimony of defendant. (*King* v. *Clark*, 3 Paige, 76; *Boughton* v. *Phillips*, 6 Paige, 434; 1 Barb. Ch. Pr., 113; *Bacon* v. *Magee*, 7 Cow., 515; Code, § 388; 11 N. Y., 575; 26 How., 177; *Stake* v. *Andree*, 18 id., 160; *Huelin* v. *Redner*, 6 Abb., 19; *Palmer* v. *Adams*, 22 How., 375; *Hodgkin* v. *A. and P. R. R. Co.*, 5 Abb. [N. S.], 73; *Cockey* v. *Hurd*, 43 How., 140.)

*Samuel Hand* for the respondent. The court had authority to make the order in question. (Code, § 271, sub. 3; *Cockey* v. *Hurd*, 4 N. Y. S. C. [J. & S.], 42.)

JOHNSON, J. If the Supreme Court had power to make the order appealed from, the question whether it should be made in the particular case presented involved the exercise of a discretion not reviewable in this court. The provisions of the Revised Statutes in respect to the discovery of books and papers were introduced to remedy the defects of power in common-law courts over that subject. Originally confined to the Supreme Court, they were extended to certain other

courts by chapter 38 of the Laws of 1841; but they neither conferred or controlled the power of the Court of Chancery. That court acted by virtue of its inherent jurisdiction over discovery and framed its own rules, fixed the limits within which it would proceed and from time to time adjusted its procedure to meet the requirements of justice. In cases of partnership, a decree for an account and for the production of books and papers warranted the master to whom the matter was referred to compel the party accounting to produce books and papers; and where the prosecuting party believed a full production was not made, he might exhibit interrogatories on the subject or summon the party before the master, to be orally examined touching them. (Hoffman's Master, 10, 11.) Prior to a decree, an order for the production of books and papers could only be made, according to the settled practice, upon the admission of the defendant in his answer. He was examined as to his possession and control of the books and papers sought to be discovered by means of the interrogatories in the bill, whether it were for discovery alone or for discovery and relief combined. If his answers to these were evasive, his conscience could be further probed by exceptions to the answer for insufficiency, or if necessary by the amendment of the bill and the introduction of further charges and interrogatories, until a sufficient disclosure was procured to enable the court to say whether possession and control were so admitted as to warrant an order requiring the production. (Wigram on Discovery, 199 and following; Hare on Discovery, 273, 276, part 4, chap. 1, § 7; Gresley's Equity, p. 25, 36, 37.) But in all cases the admission of the party of the fact of possession or control was the necessary foundation for an order requiring production. If, instead of admitting possession, the party against whom discovery was sought had alleged a voluntary destruction of the documents, even for the purpose of preventing a discovery and production, the court could at most have punished the misconduct; but the other party would have obtained the advantage of all those presumptions which a spoliation of written evidence

creates against its perpetrator. Production, when ordered, was ordered on the footing of its necessity to perfect the answer of the defendant, and as a part of that complete discovery to which the plaintiff was entitled. These principles, which were well settled and recognized, throw light upon the provisions of the Code. Inasmuch as the production of books and papers was part of the discovery procured through the examination of the defendant, on behalf of the plaintiff, by means of his compulsory answer to the interrogatories of the bill, it is difficult to see how any equivalent examination of the defendant can be had under the Code, except by the single method there pointed out. Section 389 is very positive in its terms. No action to obtain discovery under oath in aid of the prosecution or defence of another action shall be allowed, nor shall any examination of a party be had, on behalf of the adverse party, except in the manner prescribed in this chapter. That manner is by a general examination as a witness in the cause, either at or before the trial, as pointed out in sections 390 to 397, and does not include such an examination as is directed in the order appealed from.

Subdivision 7 of section 401 should, I think, be construed in subordination to the general scheme disclosed by the Code in regard to the examination of parties. The word "persons" is, in the section itself, contrasted with the word "party," and ought not to be construed as embracing parties, and thus, by an implication, doubtful at least in its character, to overthrow a clear and leading feature of the Code. The only ground on which the contrary construction rests is, that this subdivision was enacted at a later period than the other. But it should, nevertheless, be regarded as enacted in view of the positive restriction of the other section, and it is fair to conclude that plain words would have been used to disclose the legislative intent, if that had really been to allow a party to be thus examined. The cases of *Hodgskin* v. *Atlantic & P. R. Co.* (3 Daly, 70) and *Cockey* v. *Hurd* (43 How. Pr., 140; 4 Jones & Spencer, 42) show the conflicting views of the New York Common Pleas and Superior Courts on this subject,

which are ably maintained in the cases cited. Besides, that subdivision only applies in case the person whose affidavit is wanted shall have refused to make the same, while in this case no refusal is shown ; on the contrary, the difficulty is that the party has made too much affidavit already for the mover's wants. It is undoubtedly true that, under section 271, subdivision 3, " a reference may be ordered, when a question of fact, other than upon the pleadings, shall arise upon motion, or otherwise, in any stage of the action." But it does not follow, conceding that a reference may be ordered, that the party can be compelled to submit to an examination. Authority for that purpose must be found elsewhere. The last clause of section 288 provides that the court before which an action is pending, or a judge or justice thereof, may, in their discretion and upon due notice, order either party to give to the other an inspection and copy of any books, papers or documents in his possession or under his control, containing evidence relating to the merits of the action or the defence therein. But neither does this, which is the only further section directly relating to discovery contained in the Code, nor do the provisions of the Revised Statutes in relation to discovery, they being still in force, carry the argument in favor of the power to examine the party, beyond the general provision before stated on the subject of the examination of a party at the suit of another. For this step it always was necessary, and still is, to allege some distinct and definite authority. For the general rule is, that a party is not to be compelled to speak against himself. We are, therefore, of opinion that the court had no power to order the party to submit to an examination in this case, and that the order appealed from should be modified, by striking out the direction to the referee to examine the defendant.

All concur, except CHURCH, Ch. J., and ALLEN and ANDREWS, JJ., not voting.

Ordered accordingly.