# N. Y. COMMON PLEAS.

## JOHN W. PHŒNIX agt. CHARLES DUPY.

### *Examination of party before trial.*

The examination of an adverse party before trial — provided for by section 391 of the Code — is a substitute for the former remedy by bill of discovery. The court has power to grant an order for such examination only where a bill of discovery would previously have been sustained in equity.

Such examination is not an absolute right without any qualification, but is subject to the rules and principles formerly applied by courts of equity to prevent abuse, oppression or injustice, and cannot be had without an affidavit showing that the discovery sought was of some matter material to the establishment of a cause of action or of a defense, and how it was material, so that the party could know exactly what he was called upon to discover, that he might, as in a bill of discovery, object to it as immaterial or improper, or if willing to do so, admit it; or if he were examined, that the judge might confine the investigation within the limits of the discovery sought.

In the restriction imposed upon the right of discovery before the Code (which applies equally to the examination of a party before trial, provided for by this section), it is well settled that a party could not be compelled to discover any matter which might subject him to a penalty, a forfeiture or a criminal prosecution.

In an action for libel, where the affidavits — on which the order for the *defendant's* examination before trial were granted — stated that the plaintiff would endeavor upon such examination to disclose that the letters which constitute the libel for which the actions are brought were published by the defendant; that they were published in malice; that they were received by the parties to whom they were addressed, and that in consequence the plaintiff was injured:

*Held*, that the discovery which the plaintiff seeks is to compel the defendant to disclose whether he has published a libel, or, in other words, whether he has been guilty of a criminal offense for which he could be indicted and punished, and is within the restrictions imposed, therefore the plaintiff has no right to the discovery sought.

*General Term, June,* 1877.

Phœnix agt. Dupy.

THE complaint is for damages for alleged libels.

Upon an affidavit the usual summons and order for examination of defendant, as a party before trial, were granted by judge ROBINSON, on the 28th day of February, 1877.

The grounds for the application are stated in the affidavit as follows: "To endeavor to disclose that the letters set forth in said complaint were published by said defendant; so in malice; were received by the parties to whom they were addressed, and that in consequence said plaintiff has been injured as alleged in said complaint; and furthermore, the same," *i. e.*, the examination, "is necessary to enable this plaintiff to successfully prosecute this suit, inasmuch as all the same said facts are not admitted.in said answer."

These are all the grounds stated for said application.

Upon the return day of the said summons and order the defendant made a motion upon the summons order, moving affidavit, and complaint, to vacate the said summons and order.

There were no affidavits offered in support of the motion.

This motion was denied, upon the ground that "the sufficiency of the moving affidavit was decided by the judge who made the order, and is not a subject of review at special term."

The summons and order were granted *ex parte*, on the affidavit of Charles Meyer, esq., plaintiff's attorney.

*George W. Van Siclen*, of counsel, argued the following points :

I. The application was granted *ex parte*. The defendant had no notice of it. He had had no opportunity to be heard upon it. This order, therefore, might have been vacated, without notice, by the judge who made it (*Code, sec.* 324). But the order, it will be observed, was granted on the last day, the twenty-eighth of February, and was made returnable by the learned judge who granted it, upon the sixth day of March. This court will take judicial cognizance of the fact

that March 6, 1877, was Tuesday, and that by the appointment of this court, another judge came to sit at special term and chambers, on Monday, March 5, 1877. The learned judge, therefore, who granted this order, himself sent it before another judge, who would sit on March sixth. The defendant had a right, under section 324 of the Code, to notice a motion to vacate this order. He also had a right, upon the return day set by the court, to move upon the moving papers to set aside the order; certainly, on one ground, that the papers upon which it had been granted did not confer jurisdiction upon the court. Could not a party object to an order in supplementary proceedings, or move to set aside an order of arrest, or an injunction, granted at the end of a term, until the learned judge who had granted it should come again to special term or chambers ? The judge who granted the order may refuse, even where permission to apply to him had been given, to hear the order again, or to perform double duty at trial and special terms. Or must the party submit to and be injured by the *ex parte* order, or be punished for contempt, until his appeal can be heard? The learned judge, at special term, therefore, erred in denying the motion to set aside, upon the ground to do so would be to review the sufficiency of the affidavit which was decided by the judge who made the order. It having been in the power of the court at special term to have set aside this order and summons, it remains, then, to show that the same should have been set aside. Upon that point I beg leave to repeat the following arguments already made upon the appeal from the original order for examination of defendant:

1. While the order for such examination is in the discretion of the court, that discretion can only be exercised where the court has power to grant such an order. The court has power to grant an order for examination of party before trial, in a case in which equity would formerly have sustained a bill of discovery. The power given by the Code to examine an adverse party before trial is a substitute for the bill of

Phœnix agt. Dupy.

discovery in chancery (*Glenny* agt. *Stedwell*, 51 *How. Pr.*, 329; *Carr* agt. *Great Western Ins. Co.*, 3 *Daly*, 160). In the case at bar would a bill of discovery have been granted in equity? It would not, for the following reasons:

2. The facts that plaintiff desires to prove can easily be proved in another way, and plaintiff was, therefore, not entitled to the order (*Gelston* agt. *Hoyt*, 1 *Johns. Ch.*, 543; *Brown* agt. *Swann*, 10 *Pet.*, 501; *cited* 1 *Abb. New Cases*, 338). The facts that plaintiff desires to prove are set forth in the affidavit of Charles Meyer. (*a.*) That "the letters set forth in the complaint were published by the defendant." Let that be proven by those to whom they were published. (*b.*) "So in malice." This can be proven by the circumstances preceding and surrounding the publication, and by showing want of probable cause. (*c.*) That the letters "were received by the parties to whom they were addressed." This can only be proven by those parties any way. (*d.*) "That in consequence said plaintiff has been injured as alleged in said complaint." The plaintiff can prove that himself. Besides, the plaintiff must have known the aforesaid facts already, or he should not have vexed this defendant with this action. If this plaintiff has sued this defendant for $14,000 damages for having written and published the alleged libelous letters, so in malice, that they were received by the parties to whom they were addressed, and that the plaintiff has consequently been so greatly damaged, without his (plaintiff's) having known, before he brought his suit, all those facts, a court of equity will not aid him to find all this out, and prove it out of defendant's own mouth, thus rendering the latter liable to indictment. This method of examination is not to be used by a party "to get information as to whether he had any case" (Robinson, J., *in Schepmoes* agt. *Bousson*, 52 *How.*, 401).

3. The examination could not have been granted in aid of indictment (*See Montague* agt. *Dudman*, 2 *Ves., Sr.*, 398).

4. The bill of discovery would not have been allowed,

and, consequently, the court had no power to grant an order for examination, to compel a party to answer as to matters which, it appears from the papers, would tend to subject him to indictment, penalty or forfeiture, or any thing in that nature, other than the loss of the claim in suit (*Taylor* agt. *Bruen*, 2 *Barb. Ch.*, 301; *Conant* agt. *Delafield*, 3 *Edw. Ch.*, 201; *Sharp* agt. *Sharp*, 3 *Johns. Ch.*, 407; *Deas* agt. *Harvie*, 2 *Barb. Ch.*, 448; *Leggett* agt. *Postley* 2 *Paige* 599); *e. g.*, it was not allowable in libel or slander as against defendant (*Marsh* agt. *Davison*, 9 *Paige*, 580; *Bailey* agt. *Dean*, 5 *Barb.*, 297). The action at bar is for damages for alleged libel. If defendant should answer affirmatively the plaintiff's questions upon the points set forth in the moving affidavit, it would subject defendant to indictment. The plaintiff's attorney swears that he will, upon such examination, " endeavor to disclose that the letters set forth in said complaint were published by the defendant, so in malice, were received by the parties to whom they were addressed; and that in consequence said plaintiff has been injured as alleged in said complaint.

5. The defendant, as a witness, could not be compelled to answer any question, if the answer would tend to criminate him, or would form a link in a chain of evidence which would render him liable to indictment (*The People* agt. *Mather*, 4 *Wend.*, 229; *Ex parte Tappan*, 9 *How.*, 394). A bill of discovery would not be sustained against him in such a case (*Taylor* agt. *Bruen*, 2 *Barb. Ch.*, 301; *McIntyre* agt. *Mancius*, 16 *Johns.*, 592).

6. But it will be urged in support of the order for examination of defendant, that the defendant must appear and be sworn as a witness; that he may then refuse to answer questions which tend to criminate him; but that he must answer all other proper questions. The correct principle of the rule that the order can only be granted where a bill of discovery could be sustained, and that no bill of discovery could be sustained, and that, consequently, no order for examination

Phœnix agt. Dupy.

of the defendant can be granted, in a suit for libel is herein well illustrated. The party is to be examined as a witness. The evidence sought must be material. Any questions on matters immaterial or irrelevant to the issue may be objected to by the defendant's attorney, and the objection would be sustained. The defendant, therefore, can be interrogated on this examination only as to matters relevant to the issue. What is the issue? Libel. In the words of the moving affidavit, "that the letters set forth in the complaint were published by the defendant, so in malice, were received by the parties to whom they were addressed; and that in consequence said plaintiff has been injured as alleged in said complaint." The answer to every question, therefore, which the plaintiff can ask this defendant relevant to the issue, and he can ask no other, would tend to convict the defendant of libel, or form a link in the chain of evidence which might render him liable to punishment. But none of such questions may be asked the defendant; he need answer none of them. Take, for example, the first question which was asked this defendant, when the examination went on under the order appealed from (a stay of proceedings pending this appeal having been refused): "Are you the defendant in this action?" If joined to other questions put to other witnesses on the trial, this might be a link in the chain; it is only "identification," but identification is an important point in a criminal trial. I have in mind a notable case in which ex-mayor Hall lately appeared for the defense, and raised that very point of identity of the accused. In *Conner* agt. *Bradley* (*Anthon's Nisi Prius*, 99), an action for usury, the witness was sworn, and, upon being asked the first question, stated to the court that "he had been interested and concerned in the contract from the beginning," and claimed his privilege. No questions were asked. And upon this point, that the witness cannot be forced to answer, if it would tend to criminate him to a penalty, let me cite *Cloyes* agt. *Thayer* (3 *Hill*, 364 [*usury*]); *Burns* agt. *Kempshall* (24 *Wend*, 360 [*usury*]).

Cowen, J., says: "Any one of them " (the questions) " might, if answered, have furnished a link in the chain of proof that usurious interest had been paid " (*Byass* agt. *Smith*, 4 *Bosw.*, 679 [*counterfeiting label*]; *Van Tine* agt. *Nims*, 12 *How.*, 507 [*bribery*]; *Vilas* agt. *Jones*, 10 *Paige*, 76 [*usury*]; *Fellows* agt. *Wilson*, 31 *Barb.*, 162 [*do.*]; *Curtis* agt. *Knox*, 2 *Denio*, 341 [*do.*]; *Ward* agt. *The People* 3 *Hill*, 395 [*larceny*]; *Ex parte Tappan*, 9 *How.*, 394 [*libel*]; *People* agt. *Marten*, 4 *Wend.*, 229; *Conspiracy to Kidnap* [*Morgan's Case*]; *Citing* 16 *Vesey*, 242). " If it is one step having a tendency to criminate him, he is not compelled to answer " (*Citing, also* [*on Simony*], *Parkhurst* agt. *Lawton*, 2 *Swanst.*, 215), " however remotely connected with the fact " (*Citing, also, Burr's Trial*, 434, Marshall, Ch. J., " *Many links compose the chain*)."

*Charles Meyer*, of counsel for the respondent, argued the following points :

The order and summons for the examination of the defendant before trial were properly granted. The moving affidavit discloses every fact necessary to the ordering the examination. The circumstance that the affidavit discloses a desire on the part of the plaintiff to prove by the defendant certain facts to which he *personally*, not by counsel, nor yet the court, could object, is no objection to the granting of the order. It is an absolute and unqualified right of the plaintiff to examine the defendant before trial, and that right cannot be denied or abridged by reason of the possibility of an improper line of examination being resorted to. When an improper question is asked of the witness, it may then be objected to, and then, and only then, passed upon. Not now by anticipation. The testimony sought to be obtained from the defendant, as disclosed by the affidavit, is perfectly proper in itself. If there be an objection to it, as suggested by counsel, that it would tend to criminate the witness, that is a personal privilege to him, which he can exercise, and *he alone*, and *when examined*, not before. And it must be claimed *under oath*

(*Parry* agt. *Almond,* 12 *Serg. & Rawle,* 284; *United States* agt. *Burr,* 1 *Robertson's Trials,* 207, 208, 242 *to* 245). Inasmuch, therefore, as the learned judge who ordered the examination could not raise the objection, the examination was properly ordered, the privilege being still with the witness *upon the examination.* It has been urged by appellant that the right to examine a party before trial is a substitute for a bill of discovery under the old practice. This is so only in the sense that one remedy has been abolished and another established, which accomplishes the same result, but not in that the new remedy is governed by the same rules as the old, where the cases are not parallel. The statute gives the absolute and unqualified right to examine an adverse party before trial, subject only to the rules of examination as are in vogue upon the examination of any witness, either conditionally or upon the trial (*Code, secs.* 389, 391). Under the old practice, the interrogatories were substantially proposed by the *bill* of discovery, and the objections were properly entered to the interrogatories (*i. e.,* issue joined upon the bill) then; but under section 391, Code, these objections could not be interposed upon the granting of the order of examination, inasmuch as no interrogatories are then proposed. The judge, in granting the order, could not speculate upon possibilities (which exist in every case) that an improper question would be asked, or that a privilege personal to the individual to be examined, not as defendant, but *as a witness* would be claimed (*Greenl. on Evidence, vol.* 1, *sec.* 451). The privilege, until claimed by the witness, could not be asserted, either by the court or by counsel for either party to the suit. Charles Dupuy occupies two positions with respect to this proceeding, that of defendant, and that of a witness. As defendant, he may object by counsel, to any inquiry which is incompetent, irrelevant or immaterial, as injuriously affecting his rights in the action; and, as a witness, he may object to any inquiry, the result of which would tend to criminate him. The latter is a personal privilege, having no reference to the

action; he is not entitled to counsel, and must claim his privilege without suggestion from the counsel *for him as defendant*, he *as witness* being entitled to no counsel (*Thomas agt. Newton*, 1 *Mood. & Malk.*, 48, *note*). Inasmuch, then, as the inquiry sought by the plaintiff, as appears by the moving affidavit, was in itself proper, having reference to the cause of action, and the objection alleged is a personal privilege to the witness, which *he* has not claimed and could not claim until examined, and the moving affidavit presents proper grounds for granting the order and summons, the objections raised by the *defendant*, through his counsel, it is respectfully submitted, are untenable.

DALY, *Ch. J.* — The examination of an adverse party before trial provided for by section 391 of the Code is a substitute for the former remedy by bill of discovery, which was abolished by this chapter of the Code, and may be had where a bill for a discovery would previously have been sustained (*Car* agt. *W. W. Ins. Co.*, 3 *Daly*, 160; *King* agt. *Leighton*, 58 *N. Y.*, 383; *Glenny* agt. *Stedwell* [*Ct. of App.*] 51 *How.*, 329; 1 *Abb. N. C.*, 273, *and note* 332; *Wiggin* agt. *Gans*, 4 *Sandf.*, 647).

This remedy was formerly the only way in which proof of a fact exclusively within the knowledge of one of the parties could be obtained, because parties in actions at law could not then, as they can now, be called as witnesses upon the trial. It was, moreover, the only effectual mode of getting at a knowledge of the contents of documents which were in the possession of the other party, and of proving what they contained; for the relief which courts of law could afford was limited and attended with many difficulties before the statutory remedy was enacted for compelling the production and inspection of books and papers by a motion before trial. The statutory provision allowing parties to be examined as witnesses, either on their own behalf or by the adverse party, and of compelling, by motion, the inspection of books and

papers, have to a great degree dispensed with the necessity of this discovery of evidence before trial, although the right to it remains the same as before.

In view of the abuses that would arise if a party, either before any action was brought or before he had stated his cause of action in a pleading, or after an answer had been served, were allowed, without any restriction or limitation, to subject the other party to an inquisitorial investigation, under oath, to ascertain whether he could make out a cause of action, or whether his adversary could probably succeed in establishing a defense, courts of equity, at an early period, imposed limits to such investigations, by requiring that it should appear by the bill that the matter sought to be discovered was essential to the establishment of a cause of action or of a defense. " A system of judicial inquiry," says Mr. Hare, " would be obviously defective, which had no means of obtaining and compelling a production of evidence from the parties themselves, whilst a system which should set no bounds to the power of scrutiny would be fertile in expedients of oppression." And in respect to the rules and principles by which courts of equity were guided in allowing or refusing such discoveries, he further remarks: " They are the result of that scrupulous care with which a long succession of eminent judges have asserted the power of judicial investigation, without sacrificing the security and secrecy which all are entitled to claim and to preserve. They define and reconcile the rights of individual privacy and the demands of public justice. They express the extent of the privilege," whilst the limits they impose are " identified with the administration of justice, and depend upon principles which are perpetual " (*Hare on Discovery,* 11, 12 *and* 13).

Bills for the discovery of evidence being, however, expensive and dilatory, were so seldom resorted to after the inspection of documents could be compelled by motion, and especially after parties could in all cases be examined as witnesses, that the object of this provision in the Code abolish-

Phœnix agt. Dupy.

ing such bills, and substituting in their stead the simple and inexpensive procedure provided for by section 391, was not understood. By many it was interpreted literally, as giving the right to examine the party before trial, without any restriction or limitation whatever, wholly overlooking the history of this branch of jurisprudence and the abuses, injustice and oppression that could be practiced if that were permitted. Judge J. L. Mason, it is true, shortly after its enactment declared, in *Wiggin* agt. *Gaines* (4 *Sandf.*, 647), that this provision was a substitute for bills of discovery, and nothing else; " that the examination referred to in it meant, upon every fair principle of interpretation, any examination for the purpose of discovery in which formerly a bill of discovery would have been resorted to ; " and that " wherever a bill of discovery could have been filed, under the former practice, in support or defense of an action, there the party might be examined in the mode presented in this chapter, and in no other mode." But this interpretation was not followed, and it was held in subsequent cases, as it had been previously held, that upon a simple notice of five days, given by the opposite party — except the judge should, by order, fix a different time — a party was compelled, before the trial, to appear before the judge, at the time and place specified, and be examined under oath as a witness (*Taggart* agt. *Gardner*, 2 *Sandf*, 669; *Green* agt. *Wood*, 15 *How.*, 342; *Cook* agt. *Bidwell*, 19 *id.*, 483).

In *Garrison* agt. *The Mariposa Co.* (*N. Y. Com. Pleas*, *S. T.*, 1868), I declined to follow these cases, and held, as judge Mason had held, that it was simply a substitute for the former remedy by bill of discovery ; that it was, consequently, subject to the rules and principles that courts of equity had applied to prevent abuse, oppression or injustice, and could not be had without an affidavit showing that the discovery sought was of some matter material to the establishment of a cause of action or of a defense, so that the party could know exactly what he was called upon to dis-

Phœnix agt. Dupy.

cover, that he might, as in a bill of discovery, object to it as immaterial or improper, or, if willing to do so, admit it; or, if he were examined, that the judge might confine the investigation within the limits of the discovery sought (*And see Carr* agt. *G. W. Ins. Co.*, 3 *Daly*, 160).

The effect of holding that this examination of a party before trial was an absolute right without any qualification or restriction, soon became apparent where the party summoned his adversary to be examined in this way, before any complaint was filed and where the judge had nothing before him to indicate what the examination was to be about, and was left wholly without guide as to its extent, range or purpose. In view of this difficulty, and the consequence to which it would lead, it was held in a large number of cases (*from Chichester* agt. *Livingston*, 3 *Sandf.*, 718, *to Norton* agt. *Abbott*, 28 *How.*, 388) that this examination could not be had at all until after issue joined. But this did not suffice. In later cases, this construction, for which there never was any foundation, was not adhered to, and it was held that the examination might be had either before or after issue joined (*McVicar* agt. *Ketchum*, 1 *Ab.* .[*N. S.*], 452; *Bell* agt. *Richmond*, 50 *Barb.*, 571), and to meet, under this interpretation, the difficulty before suggested, it was held, first by BARBOUR, J., in *Green* agt. *Herder* (7 *Rob.*, 455), that if the application is made before the service of a complaint, it must be upon an affidavit stating: First, if made by the plaintiff, the nature of the action and demand; second, if made by the defendant, the nature of his defense; third, the name and residence of the witness, and afterwards by JONES, J., in *Duffy* agt. *Lynch* (36 *How.*, 509), that it must be upon an affidavit setting forth with particularity the facts and circumstances out of which the plaintiff supposes the cause of action to have arisen, the relief he supposes he is entitled to, the defense he anticipates, and the subjects upon which he desires to interrogate the other party. And this conflict of decisions led to the adoption, by the convention of judges, in

1870, of the twenty-first rule, the requirements of which were, in effect, to construe the section 391 as providing for the kind of discovery by the examination of a party before trial which was formerly obtained by a bill in equity, and so far as it is applicable, the practice which prevailed in equity is necessarily the guide as to the extent and nature of the discovery to which the party is entitled by such an examination.

I have entered thus at length into an examination of this subject and of the contrariety of views and the confusion that has prevailed respecting the object of this section, for the reason that even now scarcely a week passes in this court without an application being made for the examination of a party under it, without any thing being presented but an order for his examination at a specified time and place; so difficult has it been to impress upon practitioners that they have not the right to bring a party up in this way, before trial, and require him to answer, under oath, any questions that they may put to him.

In equity a party was allowed to discover from his adversary any matter which was material to the establishment of his cause of action or of his defense, although he might have other witnesses to prove it, as the admission of the matter would dispense with the necessity of calling the witnesses, and it was no answer to the application that the other party might be examined as a witness upon the trial, for the one filing the bill was not bound to call him, as a witness, on the trial, but might have a discovery previously from him as a party (*Plummer* agt. *May*, 1 *Ves. Sr.*, 426 ; *Montague* agt. *Didman*, 2 *id.*, 398 ; *Finch* agt. *Finch*, *id.*, 492 ; *Tooth* agt. *Dean of Canterbury*, 3 *Sim.*, 46 ; *March* agt. *Davidson*, 9 *Paige*, 601 ; *Story's Eq. Pleadings*, sec. 119 *and note ; Wigram on Discovery*, 2, 4 ; *Hare on Discovery*, 1, 110, 116, 187). And that this was what was meant by the codifiers in framing this section, appears from their referring in their report to " the great benefits to be expected by the relief it

would afford to the rest of the community by exempting them from attending as witnesses to prove facts which the parties respectively know and ought never to dispute" (*First Report of Coms., pp.* 244, 245). That the party from whom the discovery was sought might be protected, the one filing the bill was obliged to show, not only that the matter sought to be discovered was material, but how it was material (*McIntyre* agt. *Mancius,* 3 *Johns. C. R.,* 47; *id., in error,* 16 *Johns.,* 599; *Kimberly* agt. *Sells,* 3 *Johns. C. R.,* 467; *Lane* agt. *Stebbins,* 9 *Paige,* 624, 625). And, as a further protection, a discovery was not allowed as to a certain matter to which I shall have occasion to recur.

The affidavits on which the order for the defendant's examination in these two cases, before trial, were granted, state that the plaintiff shall endeavor, upon such examination, to disclose that the letters which constitute the libel for which the actions are brought, were published by the defendant; that they were published in malice; that they were received by the parties to whom they were addressed, and that in consequence the plaintiff was injured.

The letters being libelous, the law would imply that there was malice, and that the plaintiff was injured by their publication; and as no fact is stated in the affidavit showing a tendency to show actual malice or specific damage, the discovery sought is reduced to the inquiry whether the defendant published the letters and to whom he sent them. The discovery which the plaintiff seeks is to compel the defendant to disclose whether he has published a libel, or, in other words, whether he has been guilty of a criminal offense for which he could be indicted and punished.

In the restriction imposed upon this right of discovery, nothing was better settled than that a party could not be compelled to discover any matter which might subject him to a penalty, a forfeiture, or a criminal prosecution (*Hare on Discovery, part* 3, *chap.* 1, *sec.* 1; *Wigram on Discovery,* 60, *secs.* 83, 94). "A plaintiff," says Mr. Wigram, "whatever

Phœnix agt. Dupy.

the merits of his case may be, is not entitled to a discovery from the defendant, of any matter which would criminate him or tend to do so" (*Wigram on Discovery*, 195). Lord ELDON, in *Paxton* agt. *Douglass* (19 *Ves.*, 226), went even further, saying : " The strong inclination of my mind is to protect the party against answering any question, not only that has a direct tendency to criminate him, but that forms one step towards it." In *Bailey* agt. *Dean* (5 *Barb.*, 303), judge PRATT was of opinion that a defendant could not be compelled to disclose facts to enable a plaintiff to sustain an action of slander, because in such actions punitory damages may be given ; and in *Browsward* agt. *Edwards* (2 *Ves.*, *Sr.*, 246), lord HARDWICKE said that the court would not force the party, by his own oath, to subject himself to punishment for usury (*See March* agt. *Davidson*, 9 *Paige*, 585 ; *Taylor* agt. *Bruen*, 2 *Barb. C.*, 301 ; *In the Matter of Tappan*, *&c.*, 9 *How.*, 394 ; *The People* agt. *Mather*, 4 *Wend.*, 254 ; *In the Matter of Kiss*, 1 *Paige*, 607).

It is apparent upon the face of the affidavits, that the plaintiff had no right to the discovery sought, and both orders should, therefore, be vacated.

J. F. DALY and LARREMORE, JJ., concurring.